Peggy PAULSON, Douglas Paulson, husband and wife, and Michelle Wagner, a minor, by her guardian ad litem, Jim Schernecker, Plaintiffs-Appellants,

v.

ALLSTATE INSURANCE COMPANY, Defendant-Respondent-Petitioner,

Cheryl SCHACHT, Defendant-Respondent,

GROUP HEALTH COOPERATIVE OF SOUTH CENTRAL WISCONSIN, Subrogated-Defendant.

Supreme Court

*No. 01–0991. Oral argument February 11, 2003.— Decided July 8, 2003.*

2003 WI 99

(Also reported in 665 N.W.2d 744.)

For the defendant-respondent-petitioner there were briefs by *Richard G. Niess* and *Coyne, Niess, Schultz, Becker & Bauer, S.C.,* Madison, and oral argument by *Richard G. Niess.*

For the plaintiffs-appellants there was a brief by *Jim Schernecker* and *Action Law, S.C.,* Sun Prairie, and oral argument by *James G. Schernecker.*

An amicus curiae brief was filed by *Edward E. Robinson* and *Cannon & Dunphy, S.C.,* Brookfield, and *Brian H. Sande* and *Doar, Drill & Skow, S.C.,* Baldwin, on behalf of the Wisconsin Academy of Trial Lawyers.

An amicus curiae brief was filed by *Michele M. Ford, Agatha K. Kresa,* and *Crivello, Carlson & Mentkowski, S.C.,* Milwaukee, on behalf of the Civil Trial Counsel of Wisconsin.

¶ 1. JON P. WILCOX, J. Allstate Insurance Company (Allstate) petitions this court for review of a published decision of the court of appeals, *Paulson v. Allstate Insurance Company,* 2002 WI App 168, 256 Wis. 2d 892, 649 N.W.2d 645. The court of appeals affirmed in part, reversed in part, and remanded with directions the decision of the Columbia County Circuit Court, Daniel S. George, Judge. Only one issue addressed by the court of appeals has been raised by Allstate in its petition for review before this court and we limit our decision strictly to that issue.

¶ 2. Peggy Paulson (Paulson) was injured and her car damaged in a car accident. Paulson's insurer, Midwest Security Insurance Company (Midwest), after paying the car repair bill, settled with Allstate, the insurer for the other driver involved in the accident. Midwest and Allstate reached a settlement agreement regarding the repair bill under which Allstate paid 70 percent of the bill based upon the companies' consideration of Paulson's contributory negligence in the accident. The Paulsons have asserted that they are entitled to the difference, the 30 percent Allstate did not have to pay to Midwest. The circuit court refused to award the Paulsons the 30 percent difference. The court of appeals reversed and remanded that issue to the circuit court with instructions to enter judgment for that amount in favor of the Paulsons. We accepted Allstate's petition for review and now reverse the decision of the court of appeals on this subrogation issue.

¶ 3. We note that the material facts presented to this court are significantly different from those presented to the circuit court or the court of appeals. Most of the claims in this case have now been settled. As we interpret this case, only one issue remains for our determination. If plaintiff's insurance company pays 100 percent of the repair costs, then subsequently settles its subrogation claim with the tortfeasor's insurer for a reduced amount based on plaintiff's alleged contributory negligence, may a plaintiff collect the difference under the collateral source rule? We now reverse the court of appeals and answer the above question in the negative.

## I. FACTS AND PROCEDURAL BACKGROUND

¶ 4. The facts involved in this case are somewhat complex. In August 1998, Peggy Paulson and Cheryl Schacht (Schacht) were involved in a car accident. Paulson was injured and her car damaged when the car driven by Schacht collided with the car driven by Paulson at an intersection. Paulson presented a claim to her insurer, Midwest, for the vehicle repair costs. The repair bill from Zimbrick, Inc., was $7,542.44. By October 31, 1998, Midwest, Paulson's insurer, paid $7,042.44, the total cost of the repairs less a deductible of $500.

¶ 5. On October 11, 1999, Paulson, her husband Douglas, and her daughter Michelle Wagner (collectively, the Paulsons), filed suit against Schacht and Schacht's insurer, Allstate, in Columbia County Circuit Court. The Paulsons named Group Health Cooperative, which had paid Paulson's medical bills, and Midwest, which had paid the collision loss, as subrogees. Peggy Paulson claimed property damages, medical expenses, lost wages, and pain and suffering, while her husband

and daughter alleged loss of society, companionship, and loss of services and consortium. Douglas Paulson also claimed lost wages.

¶ 6. Before the Paulsons' suit was filed, Midwest negotiated a settlement agreement with Allstate relating to the original car repair bill. Under the agreement, Allstate paid Midwest $4,929.71, or 70 percent of the $7,042.44 Midwest paid for the repairs. Midwest agreed to the reduced payment based on Paulson's comparative negligence in the accident.

¶ 7. The Paulsons agreed to dismiss Midwest from the case, since Midwest's interest in the case as a subrogee for the amount it had paid was eliminated with the settlement agreement.

¶ 8. At the circuit court level, an issue arose regarding the timeliness of Allstate's answer to the complaint. Schacht's answer was timely filed. The parties later stipulated to Schacht's dismissal from the action. Months after its own answer was due, Allstate filed a motion to dismiss, asserting insufficiency of service of the summons and complaint. Soon thereafter, Allstate withdrew this motion. On January 26, 2001, the circuit court denied Allstate's motion for an enlargement of time and granted Paulsons' motion to strike Allstate's answer and enter default judgment. The Paulsons later moved for statutory sanctions against Allstate, which the circuit court denied.

¶ 9. On February 8, 2001, in preparation for the hearing on damages, the circuit court heard various motions in limine. Allstate argued that the Paulsons should not be allowed to present evidence regarding property damages of $8,105.93 or more, because Midwest had already settled any claims for property damages with Allstate. The Paulsons argued that the property damages incurred were higher than the damages

originally paid by Midwest. The Paulsons argued that, in addition to the charges paid by Midwest, the car needed a new steering box which cost $559, and brake parts had to be replaced three times, costing $600. The Paulsons claimed they were entitled to the entire amount.

¶ 10. The circuit court agreed with Allstate and held the Paulsons had no claim for property damages aside from the $500 deductible, because of Midwest's subrogation interest.[1]

¶ 11. On June 18, 2001, the circuit court entered judgment in favor of the Paulsons. Ms. Paulson was awarded a total of $9,677.13 for all her personal injury and property damage claims. Douglas Paulson was awarded $2,450.64, and Michelle Wagner was awarded $900.32. The Paulsons appealed.

¶ 12. The court of appeals addressed several issues. First, the court remanded the case to the circuit court for reconsideration of the imposition of sanctions, finding that the record strongly supported sanctions. Second, regarding the issue of excluding the evidence of property damages, the court held that the Paulsons were entitled to pursue Allstate for damages exceeding $7,542.44. The court of appeals also found that, under the court of appeals' decision in *Reed v. Bradley,* 2000 WI App 165, 238 Wis. 2d 439, 616 N.W.2d 916, the collateral source rule applied and entitled the Paulsons to collect the reasonable value of the damages. Here,

---

[1] At oral argument, counsel for Allstate conceded that this decision by the circuit court was erroneous and agrees with Paulson that, under *Koffman,* the Paulsons are entitled to seek recovery from Allstate for property damages not paid for by Midwest. We agree. *See Koffman v. Leichtfuss,* 2001 WI 111, ¶ 43, 246 Wis. 2d 31, 630 N.W.2d 201. However, these claims have now been settled.

the court found that the Paulsons would be able to collect at least the $2,112.73 difference between the amount paid by Midwest and the negotiated payment by Allstate. Finally, the court of appeals affirmed the circuit court's findings regarding costs and fees. Allstate then filed a petition for review with this court, which we accepted on September 26, 2002.

¶ 13. As we have noted, material facts of this case have changed since the court of appeals issued its opinion. It was represented to this court at oral argument that since the court of appeals' opinion was released, all other claims, including all property damages exceeding the original $7,542.44 figure, have been settled. We thus address only the issue of the plaintiff's claim to the $2,112.73 difference between the amount Midwest paid to the plaintiff and the amount Allstate paid to Midwest as part of a negotiated settlement agreement.

¶ 14. On August 2, 2002, Peggy and Douglas Paulson and their attorney signed a "Limited Release of All Claims."[2] This document makes clear that the only amount remaining in dispute is the amount constituting the difference between the original $7,042.44 amount Midwest paid on the repair bill and the amount of the Midwest-Allstate negotiated agreement, $4,929.71. The negotiated agreement split, 70 percent to 30 percent, the $7,042.44 amount Midwest paid on behalf of the Paulsons. The negotiated agreement did not cover the $500 deductible, which Allstate subsequently paid.

---

[2] This court allowed Allstate to supplement the record with the "Limited Release of All Claims" in an order dated November 20, 2002.

¶ 15. In exchange for a payment by Allstate of $6,500, the Paulsons agreed to release Schacht and Allstate from all claims

> *except the claim for $2,112.73 and any additional amounts the Wisconsin Supreme Court may award to the undersigned, the $2,112.73 representing the claim for the difference between the $7,042.44 paid by Midwest Security to Douglas and Peggy Paulson and the $4,929.71 paid by Allstate Property & Casualty Company to Midwest Security, which claim remains pending, is expressly reserved by the releasing parties, and is currently the subject of a Petition for Review with the State of Wisconsin Supreme court in Case Number 01–0991.*

"Limited Release of All Claims" (emphasis in original). The agreement goes on to clarify:

> It is understood and agreed that the claims released by the undersigned include claims for sanctions against Allstate, claims for additional statutory costs and disbursements, and claims for property damage not previously paid by Midwest Security, all as set forth in the Court of Appeals decision in Case Number 01–0991.

¶ 16. Given the above agreement, this court decides, based on the facts as they now stand, the only remaining issue: whether Paulson is entitled to the difference between the amount Midwest paid and the amount for which Midwest negotiated a settlement. Accordingly, claims related to other amounts already settled do not factor into our analysis.

## II. ANALYSIS

¶ 17. This case raises arguments involving the interaction of the collateral source rule, subrogation,

and the "made whole" doctrine. This court has dealt with each of these issues on prior occasions and, as those precedents make clear, the application of the principles involved depends heavily upon the facts presented. *See, e.g., Koffman v. Leichfuss,* 2001 WI 111, ¶ 20, 246 Wis. 2d 31, 630 N.W.2d 201. This case is no exception.

¶ 18. This court is asked to decide whether Paulson may recover the amount of money representing the difference between the amount Paulson's insurer paid and what her insurer settled for in negotiations with the tortfeasor's insurer upon its subrogation claim. Because allowing the plaintiff to recover this sum would amount to double recovery, we find that Paulson may not recover that difference as damages. We find that Paulson has already collected the amount of property damages to which she is entitled and is not entitled to any additional recompense.

¶ 19. Whether an insurer's subrogation rights limit a plaintiff's right to recovery is a question of law that this court reviews "independently of the determination of the circuit court." *See Koffman,* 246 Wis. 2d 31, ¶ 20 (citing *Ellsworth v. Schelbrock,* 2000 WI 63, ¶ 6, 235 Wis. 2d 678, 611 N.W.2d 764; *Miller v. Thomack,* 210 Wis. 2d 650, 658, 563 N.W.2d 891 (1997)). Whether the collateral source rule applies in a particular case is a question of law reviewed independently, "although aided" by the analyses of the circuit court and the court of appeals. *See Ellsworth,* 235 Wis. 2d 678, ¶ 6.

¶ 20. Paulson's main argument to this court is that Allstate has no valid subrogation claim because Paulson was not made whole before Midwest and All-

state settled, and that under the *Rimes/Garrity* precedents of this court, Paulson must be made whole before a subrogation claim exists. Because Paulson was prevented from arguing damages in excess of those Midwest paid, and because there has been no *Rimes* hearing, there has not yet been any determination of damages or finding that Paulson has been made whole. We reject Paulson's argument and find that the made whole doctrine is inapplicable to this case.

¶ 21. Although this court's precedents in *Garrity v. Rural Mutual Insurance Company*, 77 Wis. 2d 537, 253 N.W.2d 512 (1977), and *Rimes v. State Farm Mutual Automobile Insurance Company*, 106 Wis. 2d 263, 316 N.W.2d 348 (1982), do hold that under certain circumstances, a plaintiff must be made whole before an insurer has a right to subrogation, those circumstances do not exist in this case.

¶ 22. In *Garrity*, 77 Wis. 2d at 539–40, the insureds suffered a fire loss and the damages from the fire were found to exceed the limits under their fire insurance. The very issue addressed in the case highlights the fundamental difference between that case and the case at hand. There, the court began stating the issue: "The question is: When an insured's *loss exceeds the amount recoverable* under a standard [] insurance policy . . . " *Garrity*, 77 Wis. 2d at 538 (emphasis added). The court in *Garrity* found that the general rule was that "where either the insurer or the insured must to some extent go unpaid, the loss should be borne by the insurer for that is a risk the insured has paid it to assume." *Id.* at 542 (internal citation omitted). Similarly, in *Rimes*, 106 Wis. 2d at 264–65, the insureds' losses far exceeded the money obtained from the tortfeasors in settlement. Citing *Garrity*, the court found

that the insurer was not entitled to subrogation until the insured was made whole. *Rimes,* 106 Wis. 2d at 276.

¶ 23. Neither of these cases apply to the facts of this case. *Rimes* and *Garrity* deal with the situation of competition between an insured and his or her insurer for a limited pool of money. *See Schulte v. Frazin,* 176 Wis. 2d 622, 631–32, 500 N.W.2d 305 (1993) (discussing Wisconsin precedents on the made whole rule and noting that the equitable factor in *Rimes* and *Garrity* was "the prospect of an insurer competing with its own insured for funds which are insufficient to make the insured whole"); *Oakley v. Fireman's Fund of Wisconsin,* 162 Wis. 2d 821, 831, 470 N.W.2d 882 (1991).

¶ 24. In *Vogt v. Schroeder,* 129 Wis. 2d 3, 14, 383 N.W.2d 876 (1986), this court made clear that equitable principles were at work in *Rimes* and *Garrity* and that in both cases, "this court was presented with the inequitable prospect of insurance companies attempting to take the funds that should have gone to the insured." The issue in these cases, according to *Vogt,* is one of priority. *Id.* at 14–15 ("*Garrity* and *Rimes,* although involving different types of insurance, were basically the same case—who was to have priority, the insured or the insurer, where the total payments, including possible subrogation recovery, still would not make the insured whole.").

¶ 25. Other Wisconsin cases continue in this strain. In *Leonard v. Dusek,* 184 Wis. 2d 267, 275–76, 516 N.W.2d 453 (Ct. App. 1994), the court of appeals again noted that the circumstance where an insurer is not competing with its insured for limited funds is to be treated differently under the principles of subrogation. In *Valley Forge Insurance Company v. Home Mutual Insurance Company,* 133 Wis. 2d 364, 396 N.W.2d 348 (Ct. App. 1986), the court of appeals held that a victim's

insurer was not entitled to subrogation where the victim recovered less than his total loss. Again, the situation was one of the insurer competing with the insured for funds. That is not the case here.

¶ 26. *Couch on Insurance* also supports this interpretation of the made whole rule. In a section discussing the made whole rule, Couch's very first statement raises the threshold issue of insufficient funds: "In many instances, the insurer and insured both have rights of recovery against the third party primarily liable for the loss, yet the amount recoverable from the third party is insufficient to completely satisfy the claims of both."[3] *Couch on Insurance,* § 223.133, at 223–145 (3d ed. 2000).

¶ 27. The circumstances described by Couch and in these Wisconsin cases show that the made whole rule is inapplicable in this case. While Paulson argues that she had damages beyond those paid by her insurer and that Midwest and Allstate settled before there was any finding of the extent of damages, she has made no assertion that there was an insufficient pool of money. The specter of an insurer competing with the insured for a limited amount of funds is simply not raised by the facts of this case. There has been no discussion of policy limits or a limited pool of funds for which Midwest and

---

[3] In discussing the rule, we note that Couch cites, in a footnote, a particularly aptly named article in the University of Chicago Law Review, entitled: *Comment: Insurance and Subrogation: When the Pie Isn't Big Enough, Who Eats Last?. Couch on Insurance,* § 223.133, at 223–145 n.80 (3d ed. 2000); *see also* JA Greenblatt, *When the Pie Isn't Big Enough, Who Eats Last?,* 64 U. Chi. L. Rev. 1337 (1997). This title illustrates the exact situation in which we find that the *Rimes/Garrity* cases apply; if there is no doubt that the "pie" is big enough, we find that the *Rimes/Garrity* issue does not arise.

Paulson are competing. Here, Midwest paid $7,042.44 for a car repair bill and settled with Allstate regarding that bill. At this stage of the case, all amounts aside from that particular bill have been settled.[4] Although Midwest agreed to a lesser amount in its settlement with Allstate based on the insurers' assessment of Paulson's contributory negligence, this agreement in no way decreased Paulson's recovery. She has already received, through payment by her insurer or by Allstate, the $7,542.44 requested for the original repair bill. She cannot now recover more upon that bill.

¶ 28. We now delve into the matters related to application of subrogation and the collateral source rule. As has been noted by this court, the interaction of these principles can lead to confusion. *See Koffman,* 246 Wis. 2d 31, ¶ 33.

¶ 29. Wisconsin case law has clearly provided that application of subrogation is controlled by equitable principles. *See Ruckel v. Gassner,* 2002 WI 67, ¶ 15, 253 Wis. 2d 280, 646 N.W.2d 11; *Vogt,* 129 Wis. 2d at 12–13. This court has held that subrogation "deals with the right of the insurer to be put in the position of the insured in order to pursue recovery from third parties, legally responsible to the insured, for a loss paid by the insurer to the insured." *Cunningham v. Metro. Life Ins. Co.,* 121 Wis. 2d 437, 443–44, 360 N.W.2d 33 (1985). In *Vogt,* 129 Wis. 2d at 17 n.6 (citations omitted), this court has noted: "The general rule is that an insurer, on paying a loss, is subrogated in a corresponding

---

[4] It is true that Allstate initially argued that it was excused from all property damages other than the deductible on the basis of its settlement agreement with Midwest, but Allstate has since paid the $500 deductible and paid $6,500 for a settlement on all other claims, including property damage which exceeded the $7,042.44 repair bill paid by Midwest.

amount to the insured's right of action against any other person responsible for the loss." *Ruckel,* 253 Wis. 2d 280, ¶ 15, holds that one of the purposes of subrogation law is to avoid unjust enrichment via double recovery. Its application in a particular case depends on facts. *Beacon Bowl Inc., v. Wis. Elec. Power Co.,* 176 Wis. 2d 740, 776, 501 N.W.2d 788 (1993); *Leonard,* 184 Wis. 2d at 272 (quoting *Vogt,* 129 Wis. 2d at 15).

¶ 30. The collateral source rule is also grounded in equitable policies. In *Koffman,* 246 Wis. 2d 31, ¶ 29, this court reiterated the explanation of the policy behind the rule given in *Ellsworth,* 235 Wis. 2d 678, ¶ 7, stating:

> The tortfeasor who is legally responsible for causing injury is not relieved of his obligation to the victim simply because the victim had the foresight to arrange, or the good fortune to receive, benefits from a collateral source for injuries and expenses.

As such, if any windfall arises in a case, the benefit is to inure to the plaintiff, not the tortfeasor. *Koffman,* 246 Wis. 2d 31, ¶ 30. Thus, as in both *Ellsworth* and *Koffman,* where the plaintiff's insurer receives discounts for medical expenses, the tortfeasor is still held responsible for the reasonable value of the services provided.[5]

---

[5] We note that there has been some disagreement on the equity of the measure provided in *Koffman* and *Ellsworth.* Dissents in both cases asserted that the plaintiff should only be entitled to the amount actually paid for the services. *See Koffman v. Leichtfuss,* 246 Wis. 2d 31 (J. Sykes, dissenting); *Ellsworth v. Schelbrock,* 2000 WI 63, 235 Wis. 2d 678, 611 N.W.2d 764 (J. Sykes, dissenting);. Nevertheless, today the rule

¶ 31. Paulson correctly acknowledges that, under *Lambert v. Wrensch,* 135 Wis. 2d 105, 121, 399 N.W.2d 369 (1987), if subrogation exists, the collateral source rule is inapplicable. *See also Gurney v. Heritage Mut. Ins. Co.,* 183 Wis. 2d 270, 280–81, 515 N.W.2d 526 (Ct. App. 1994). This court in *Koffman* limited the applicability of *Lambert,* noting that the case should not be read to mean that wherever an insurer has a subrogated interest, the collateral source rule does not apply. *Koffman,* 246 Wis. 2d 31, ¶¶ 38–39.

¶ 32. In the context of a case such as this, the *Lambert* rule makes sense. Here, Midwest has divested itself of its subrogation interest by settling with Allstate. This was recognized by the circuit court in this case, and Paulson agreed to Midwest's dismissal from the case. As noted in *Koffman,* the effect of the *Lambert* rule is to reduce recovery by the amounts paid on his or her behalf in order to prevent double recovery. *See id.,* ¶ 41. We find that the subrogation trumps the collateral source rule under the facts of this case.

¶ 33. Paulson's case does not raise the issue of whether a plaintiff is entitled to the reasonable value of the expenses or services. The reasonable value rule has been established in *Koffman* and *Ellsworth.* Under the facts presented here, the plaintiff-insured has received the $7,542.44 amount constituting the original repair bill. All issues other than the $7,542.44 repair bill have already been settled by the parties. Allstate has paid the $500 deductible portion of the $7,542.44 repair bill, and Paulson has received the additional $7,042.44 to cover

in Wisconsin is that a plaintiff is entitled to the reasonable value of the expenses paid, regardless of the actual payment. *Koffman,* 246 Wis. 2d 31, ¶¶ 2, 25.

the repair bill. The fact that Midwest and Allstate agreed to a settlement wherein Allstate paid 70 percent rather than 100 percent does not affect Paulson's recovery.

¶ 34. In *Ellsworth*, 235 Wis. 2d 678, ¶ 17, this court noted that the collateral source rule is to "place upon the tortfeasor the full responsibility for the loss he has caused." In this case, though, additional equitable considerations come into play. This court has strongly encouraged and favored settlement agreements between parties. *See Schulte*, 176 Wis. 2d at 634–35. Allowing the plaintiff to collect the difference between the reasonable value of the car repairs and the amount Midwest settled for would discourage settlement of subrogation claims. Allstate would have no incentive to settle with Midwest. Litigation of the subrogation claims would be the only alternative.

¶ 35. Also, the freedom to contract must be considered. There is no reason to disturb the contract between Midwest and Allstate, because Paulson has already recovered $7,542.44, the value of the original car repair bill. Paulson submitted a bill of $7,542.44 to Midwest. Midwest paid the Paulsons $7,042.44 for that bill. Allstate paid the $500 deductible and settled with Midwest on the remainder of that original repair bill. Allstate also settled the claim for additional property damages with the Paulsons. As noted in *Koffman*, 246 Wis. 2d 31, ¶ 43, an insured's right to recover amounts beyond those paid by the insurer is not extinguished by subrogation. As the court of appeals found in this case, even if other bills remained besides the $7,042.44, the plaintiff could seek recovery of those bills from the

defendant. Thus, Paulson's recovery is not affected by the settlement agreement between Midwest and Allstate.

¶ 36. Finally, the court of appeals determined that the Paulsons were entitled to recovery on the basis of *Reed,* 238 Wis. 2d 439. This argument, too, relies upon a balance of equities.

¶ 37. In the case at hand, the court of appeals stated that there is no valid distinction between the *Reed* and *Paulson* cases and, as such, the Paulsons are entitled to application of the collateral source rule and recovery of the 30 percent difference between the amount paid by Midwest and the amount Midwest took in settling its subrogation interest with Allstate.

¶ 38. In *Reed,* 238 Wis. 2d 439, ¶ 1, the plaintiffs were injured in a car accident. The plaintiffs' insurer paid for their medical expenses. Before trial, the plaintiffs' insurer and the other driver's insurer negotiated a settlement under which the plaintiffs' insurer accepted payment of 75 percent of the stipulated medical expenses in exchange for assignment of the subrogation claim. *Id.* Liability in the case was stipulated. *Id.,* ¶ 2. The court of appeals, analogizing the situation to others where the collateral source rule applies, held that the plaintiffs were entitled to the benefit of the insurers' bargain, the difference between the reasonable value of the services and the negotiated settlement, because a tortfeasor should not receive the "advantage of 'gratuities from third parties.' " *Id.,* ¶¶ 2–3.

¶ 39. We agree with the court of appeals that the *Reed* case is indistinguishable from this case. Because of the default judgment placing liability on the defendant in this case, the facts are essentially the same. In both cases, the plaintiffs' insurer reached a settlement agreement with the tortfeasor before trial on the plain-

537

tiffs' claims. In *Reed,* as here, the defendants argued that the plaintiffs were "made whole," even without collecting the difference between the reasonable value of medical services and the settlement amount.[6] In both cases, the plaintiffs' recovery of the amount not taken by the subrogated insurer would allow the plaintiff to collect over 100 percent of the damages suffered.

¶ 40. We believe the court of appeals' decision in *Reed* was in error and should now be overruled. In *Koffman,* 246 Wis. 2d 31, ¶ 56, this court held that a plaintiff is entitled to collect the reasonable value of the medical services he or she received, regardless of what an insurer actually paid for the services. The court of appeals recognized that rule in *Reed,* 238 Wis. 2d 439, ¶ 4. The court there then went on to state:

> In our view, State Farm's agreement to settle its limited subrogation claim for less than its face value is analogous to the situation where a health care provider sets an injured plaintiff's broken bone for less than the reasonable cost. While some may view a verdict for the plaintiff for the reasonable cost of such a procedure as a double recovery, under the collateral source rule it does not amount to unjust enrichment.

*Id.* The court of appeals then held that the plaintiffs were entitled to the "benefit of the insurers' bargain by virtue of having paid premiums for health care coverage over time." *Id.* at 5.

¶ 41. We disagree with the analysis of the court of appeals in *Reed* and find that the balance of equities lies somewhat differently in cases such as *Reed* and *Paulson. Koffman* lays out the policies followed by this

---

[6] *See Reed* Def.-Appellant's Br. at 2 (stating that "there is no dispute that they [the plaintiffs] were made whole" (emphasis omitted)).

court. First, quoting *Ellsworth,* we noted that the tortfeasor is not relieved of liability simply because the victim had "the foresight to arrange, or the good fortune to receive, benefits from a collateral source for injuries and expenses." *Koffman,* 246 Wis. 2d 31, ¶ 29. Second, "[s]ubrogation exists to ensure that the loss is ultimately placed upon the wrongdoer and to prevent the subrogor from being unjustly enriched through a double recovery, i.e., a recovery from the subrogated party and the liable third party." *Id.,* ¶ 33. Our refusal to award the plaintiffs the amount not accepted by their insurer does not do harm to either of these policies.

¶ 42. In the present case, as in *Reed,* the negotiated settlement related to the limited subrogation interest of the plaintiffs' insurer and in no way affected the plaintiffs' recovery. Agreements like the one between Midwest and Allstate do not reduce the recovery of the plaintiffs. Under the limited circumstances such as those presented here, the plaintiffs receive the reasonable value of their expenses and maintain the right of action over any other damages. Unlike the situation where a health care provider agrees to set a broken bone for less than the reasonable cost, under the facts here and in *Reed,* there is no "volunteer" offering the plaintiff the benefit of reduced costs and there is no danger to the plaintiff's recovery of the reasonable value of expenses. There is no allegation of a limited pool of money here or that the insurer is competing with the plaintiffs for the same funds. Here, the Paulsons submitted a repair bill to Midwest for $7,542.44. Midwest paid the Paulsons $7,042.44, the total repair bill less a $500 deductible. Midwest negotiated a settlement with Allstate relating to the $7,042.44, agreeing to take 70 percent ($4,929.71) of the total based on its assessment of its insureds' contributory negligence.

Allstate paid the Paulsons the $500 deductible and paid Midwest the agreed upon amount. The Paulsons have recovered the $7,542.44 they initially requested for the $7,542.44 repair bill. As we have noted, the only amount at issue here is the difference between the amount Midwest paid on the $7,542.44 bill and the amount it settled for with Allstate, because all other claims have been settled. Refusing to recognize the agreement between Midwest and Allstate would inform insurers that there is no point to settlement negotiations, because if the subrogated insurer agrees to take less than the face value of its claim, the plaintiffs will simply get the rest from the tortfeasor's insurer.

¶ 43. Finding recovery appropriate in these circumstances would allow plaintiffs double recovery and discourage settlement negotiations. Where the plaintiff has recovered the reasonable value of his or her expenses and makes no allegation that the agreement prevents such recovery, there is no reason to award the plaintiff the difference.

¶ 44. Such a decision is particularly appropriate where, as here, the insurers have agreed that the insured plaintiff was contributorily negligent. In the context of contributory negligence, the tortfeasor has paid the full amount of the damage caused and the plaintiff, by fully recovering for the repair costs, has received whatever "windfall" is created by the settlement.

### III. CONCLUSION

¶ 45. For the foregoing reasons, we find that, under the limited circumstances presented by this case, Paulson is not entitled to the 30 percent difference between the amount Midwest paid for Paulson's car

repairs and the amount it ultimately settled for in its agreement with Allstate. Paulson has already received $7,542.44 to cover the original repair bill and, under the circumstances here, equity demands that she receive no more.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 46. ANN WALSH BRADLEY, J. *(concurring).* Given the odd procedural posture of this case, I write separately to underscore what the majority repeatedly notes: the holding of this case is limited to the facts of this case. *See, e.g.,* Majority op., ¶¶ 32, 42, 45. I also write separately to discuss the intersection between the collateral source rule and subrogation, which is critical to the outcome of this case.

¶ 47. Under the collateral source rule, a plaintiff's recovery from a tortfeasor cannot be reduced by payments or benefits that the plaintiff receives from other sources. *Koffman v. Leichtfuss,* 2001 WI 111, ¶ 29, 246 Wis. 2d 31, 630 N.W.2d 201. The collateral source rule was developed not to provide the injured party with a windfall, but instead to prevent tortfeasors from escaping their obligations to compensate an injured party merely because a collateral source also compensated the injured party. *Id.,* ¶ 29 (citing *Ellsworth v. Schelbrock,* 2000 WI 63, ¶ 7, 235 Wis. 2d 678, 611 N.W.2d 764).

¶ 48. The collateral source rule is grounded in the policy that "should a windfall arise as a consequence of an outside payment, the party to profit from that collateral source is 'the person who has been injured, not the one whose wrongful acts caused the injury.' " *Koffman,* 246 Wis. 2d 31, ¶ 29 (citations omitted).

¶ 49. Under principles of subrogation, a᾽ subrogated party, by virtue and to the extent of payments

541

made on behalf of another, obtains a right of recovery in an action against a third-party tortfeasor and is a necessary party in an action against such a tortfeasor. *Id.,* ¶ 33. Subrogation affects the extent to which the collateral source rule applies. *Lambert v. Wrensch,* 135 Wis. 2d 105, 113–121, 399 N.W.2d 369 (1987).

¶ 50. In *Lambert,* the subrogated insurer had paid the entirety of the medical expenses that the plaintiff sought from the defendant. The insurer was unable to exercise its subrogation rights because the statute of limitations had expired. *Id.* at 118–119.

¶ 51. Relying upon *Heifetz v. Johnson,* 61 Wis. 2d 111, 124–25, 211 N.W.2d 834 (1973), the *Lambert* court concluded that the plaintiff could not recover the amount that was subject to the subrogation claim. *Lambert,* 135 Wis. 2d at 118–119. In doing so, it stated: "[W]here subrogation is present, as here, the collateral source rule is inapplicable." *Id.* at 121.

¶ 52. As noted by the majority, this court had the opportunity to discuss and clarify *Lambert* in *Koffman.* Majority op., ¶ 31. Citing *Voge v. Anderson,* 181 Wis. 2d 726, 732, 512 N.W.2d 749 (1994), the *Koffman* court recognized that *Lambert* is "properly characterized . . . as holding that 'where the insurer is barred from pursuing a claim [of subrogation], the tortfeasor is entitled to a reduction in judgment for the amount of that claim.' " *Koffman,* 246 Wis. 2d 31, ¶ 39.

¶ 53. Consistent with that narrow reading of *Lambert,* the *Koffman* court clarified that where "the risk for double recovery on the part of the plaintiff-insured does not exist because the insurer is not barred from pursuing its subrogation rights, there is no justification for nullifying the collateral source rule." *Id.,* ¶ 40. We emphasized that in the ordinary case, the

542

"collateral source rule and the principles of subrogation work in tandem to further the goals of both parties." *Id.*

¶ 54. As the majority notes, the interaction of the principles of subrogation and the collateral source rule is dependent on the specific facts of this case. Here, the parties altered the facts of this case which were presented in the circuit court and the court of appeals, when they entered into a settlement agreement after the petition for review had been filed in this court. Based on the facts now before us, I agree with the analysis and conclusion of the majority opinion. Accordingly, I respectfully concur.