903 So.2d 285 (2005)
Margaret SCHONAU, on behalf of herself and all others similarly situated, Appellant,
v.
GEICO GENERAL INSURANCE COMPANY, a foreign corporation, Appellee.
No. 4D03-3595.
District Court of Appeal of Florida, Fourth District.
June 8, 2005.
Christopher J. Lynch of Hunter, Williams & Lynch, P.A., Miami, for appellant.
Frank A. Zacherl and Colleen A. Hoey of Shutts & Bowen LLP, Miami, for appellee.

ON MOTION FOR REHEARING
TAYLOR, J.
On rehearing, we withdraw our previous opinion and substitute the following in its place.
*286 Appellant Margaret Schonau challenges the dismissal of her class action complaint. Her complaint sought a declaratory judgment against her automobile insurance carrier to recover her full collision deductible and unpaid rental car bill from subrogation funds her insurer obtained from the third party tortfeasor's insurance carrier. We affirm because appellant's allegations, based on the common law "made whole" doctrine, failed to state a cause of action as a matter of law.
Schonau had automobile collision coverage under a policy issued by GEICO, with a $100 deductible. The policy also provided for rental car reimbursement at $20.00 per day, with a total reimbursement of $600.00 per loss. After an accident which resulted in property damage to Schonau's vehicle, GEICO paid Schonau the collision benefits of $8,550.67, minus the $100.00 deductible, plus $600.00 in rental expense reimbursement, for a total of $9,050.67.
GEICO then sent Schonau a letter notifying her that it would be seeking subrogation against the tortfeasor's carrier to recover the benefits it paid her and advising her that it would also pursue a claim for the uninsured losses she suffered. These losses, which were in excess of $4,000, included her $100 deductible, as well as the uninsured portion of her rental car bill.
GEICO negotiated with the tortfeasor's insurance carrier and ultimately received a check for $9,294.16. GEICO then issued Schonau a check for $243.49, the amount GEICO received in excess of what GEICO had paid Schonau. This reimbursed her deductible and a small portion of her unreimbursed rental car bill.
Schonau filed a class action complaint against GEICO for a declaratory decree that GEICO insureds are entitled to recover up to the full extent of their uncompensated losses before GEICO can participate in any recovery it obtains from third-party tortfeasors. In her amended complaint, Schonau cites the standard subrogation clause of the insurance contract, which states:
¶ 9 SUBROGATION
When payment is made under this policy we will be subrogated to all the insured's rights of recovery against others. The insured will help us to enforce these rights. The insured will do nothing after loss to prejudice these rights.
This means we would have the right to sue or otherwise recover the loss from anyone else who may be held responsible
When a person has been paid damages by us under this policy and also recovers from another, that person shall:
(A) hold in trust for us the amount recovered; and (B) reimburse us to the extent of our payment.
Schonau's amended complaint then asserts that the above subrogation provisions do not override the common law rule that insureds are entitled to be made whole prior to GEICO's participation in any recovery from a tortfeasor. She does not allege that she has attempted to recover her uninsured losses from the tortfeasor or its insurer but is unable to do so due to GEICO's actions.
The trial court dismissed the complaint with prejudice, finding that the complaint failed to state a cause of action for declaratory relief and, alternatively, that the plaintiff lacked standing to maintain the action, because she had not yet sued the third-party tortfeasor to see if she could be made whole in that fashion.
We conclude that the trial court properly dismissed the complaint because the complaint failed to allege facts that would bring plaintiff within the scope of the "made whole" doctrine, as applied in *287 Florida. Florida law does not appear to recognize an affirmative right or cause of action by an insured against its insurer to be "made whole" beyond the payment of insurance policy proceeds. Instead, it appears that Florida law allows the "made whole" doctrine as a defense used by insureds to protect the insured's direct recovery from a tortfeasor, where the insured's own insurer makes a subrogation claim upon the insured's recovery. Decisions applying the "made whole" doctrine essentially hold that where both the insurer and the insured simultaneously attempt to recover all of their damages from a tortfeasor who cannot (because of insolvency, limited insurance coverage, or other reasons) pay the full value of damages, the insured has priority of recovery over the insurer. See, e.g., Florida Farm Bureau Ins. Co. v. Martin, 377 So.2d 827, 828-30 (Fla. 1st DCA 1979) (holding that the trial court properly denied an insurer's subrogation claim from funds recovered by its insureds because the loss sustained exceeded the total recovery from all parties).
The "made whole" rule was explained in the context of medical expense recovery in Humana Health Plans v. Lawton, 675 So.2d 1382, 1384 (Fla. 5th DCA 1996):
The rule in Florida is that, at common law, an insurer does not have a right to subrogation, against its own insured, for medical expenses recovered by the insured from the tortfeasor, unless the insured collected all of his damages.... However, where full recovery has been made by the insured, who is thus "made whole," any payments to the insured over and above his actual damages may be viewed as a "double recovery," thus equitably entitling the insurer to subrogation against the insured's recovery.
(citation omitted). This same rule applies generally to all damages, not just medical expenses. See Magsipoc v. Larsen, 639 So.2d 1038, 1041-42 (Fla. 5th DCA 1994) (addressing section 768.76, Florida Statutes [collateral sources], recognizing general "made whole" rule where insured failed to recover $1 million of his losses from "judgment-proof" tortfeasor).
We could find no Florida authority for appellant's claim that GEICO is prohibited from enforcing its subrogation rights immediately upon payment of her loss. Appellant's policy specifically provides that "[GEICO] will have the right to sue for or otherwise recover the loss from anyone else who may be held responsible." Furthermore, subrogation rights may arise by operation of law and are favored under important public policy grounds. As the court in Florida Farm Bureau explained, "subrogation is a normal incident of indemnity insurance where the primary purpose of the insurance is to allow true restitution for the loss suffered." 377 So.2d at 829. Subrogation principles require a tortfeasor to pay for all damages caused while simultaneously preventing an insured from obtaining a double recovery by recovering damages from both an insurer and the tortfeasor. Id. As GEICO points out, "plaintiff's proposed application of the `made whole' doctrine would effectively eliminate this entire body of Florida subrogation law, by forcing the insurer to cover uninsured losses before the insurer can pursue a subrogation claim."
Other courts have rejected appellant's theory of the "made whole" doctrine and confirmed that the "made whole" concept is intended to protect recoveries obtained by the insured in limited fund scenarios. Perhaps the leading case in the country on this rule is the Wisconsin Supreme Court's decision in Garrity v. Rural Mutual Ins. Co., 77 Wis.2d 537, 253 N.W.2d 512 (1977). See e.g., Fla. Farm Bureau, 377 So.2d at 830 (discussing Garrity extensively); Hare v. State, 733 So.2d *288 277, 281 (Miss.1999) (quoting Garrity). Garrity held that in a lawsuit by an insured against the tortfeasor, the insured had priority over the insurer to recover where losses exceeded $110,000, insurance coverage paid less than $68,000, and the tortfeasor's insurance coverage was only $25,000.
Recently, the Wisconsin Supreme Court was presented with facts similar to those in this case. See Paulson v. Allstate Ins. Co., 263 Wis.2d 520, 665 N.W.2d 744 (2003). In Paulson, two insurance companies settled despite the fact that the tortfeasor's damages were not all paid. Although Paulson recognized that "under certain circumstances" a plaintiff must be made whole before an insurer has a right to subrogation, it distinguished Garrity as dealing with the situation where there was a "limited pool of money." Paulson, 665 N.W.2d at 750. It then noted that this interpretation of the "made whole" rule is supported by a leading treatise on insurance:

Couch on Insurance also supports this interpretation of the made whole rule. In a section discussing the made whole rule, Couch's very first statement raises the threshold issue of insufficient funds: "In many instances, the insurer and insured both have rights of recovery against the third party primarily liable for the loss, yet the amount recoverable from the third party is insufficient to completely satisfy the claims of both." Couch on Insurance, § 223.133, at 223-145 (3d ed.2000).
Id. (footnote omitted)
The Paulson court went on to conclude that the plaintiff has the right to sue independently, and that in the absence of some limit on the available funds from the tortfeasor, that right is sufficient to allow the subrogee insurance company to keep its settlement:
While Paulson argues that she had damages beyond those paid by her insurer and that Midwest and Allstate settled before there was any finding of the extent of damages, she has made no assertion that there was an insufficient pool of money. The specter of an insurer competing with the insured for a limited amount of funds is simply not raised by the facts of this case.... [A]n insured's right to recover amounts beyond those paid by the insurer is not extinguished by subrogation. As the court of appeals found in this case, even if other bills remained besides the $7,042.44, the plaintiff could seek recovery of those bills from the defendant. Thus, Paulson's recovery is not affected by the settlement agreement between Midwest and Allstate.
Id. at 750-53.
In sum, we can find no Florida authority applying the "made whole" rule so as to preclude GEICO from pursuing subrogation in accordance with the unambiguous subrogation provisions in the insurance contract. Accordingly, we affirm the trial court's dismissal of appellant's amended complaint.[1]
Affirmed.
WARNER and KLEIN, JJ., concur.
NOTES
[1] Because we rule on the merits of the case, we do not address whether this action is appropriate for declaratory relief or class action treatment.