Roger H. Fischer, Sr. and Sandra J. Fischer, Plaintiffs-Appellants,†

v.

Pamela A. Steffen and Wilson Mutual Insurance Co., Defendants-Respondents,

Kohler Company and Medicare Secondary Payer Recovery Contractor, Subrogated Defendants.

Court of Appeals

*No. 2009AP1669. Submitted on briefs March 8, 2010. —Decided April 28, 2010.*

2010 WI App 68

(Also reported in 783 N.W.2d 889.)

† Petition for Review granted 9/21/10.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Shawn Brock of Wurtz, Roth, Basler & Brock, S.C.* of Sheboygan.

On behalf of the defendants-respondents, the cause was submitted on the brief of *James O. Conway* and *Corrado Cirillo* of *Olsen, Kloet, Gunderson & Conway* of Sheboygan.

Before Brown, C.J., Anderson and Snyder, JJ.

¶ 1. BROWN, C.J. This case involves the interplay

between the subrogation rule and the collateral source rule, a subject most extensively discussed by our supreme court in *Paulson v. Allstate Insurance Co.*, 2003 WI 99, 263 Wis. 2d 520, 665 N.W.2d 744. There, our supreme court held that where "plaintiff's insurance company pays 100 percent of the repair costs, then subsequently settles its subrogation claim with the tortfeasor's insurer for a reduced amount based on plaintiff's alleged contributory negligence," the plaintiff could not collect the difference under the collateral source rule. *Id.*, ¶ 3. Here, plaintiff Roger H. Fischer's insurer paid $10,000 (the policy limit) of his $12,157.14 in medical expenses resulting from an automobile collision. It then arbitrated its subrogation claim against the alleged tortfeasor Pamela A. Steffen and her insurer, Wilson Mutual Insurance Company. Fischer's insurer lost the arbitration because the arbitration panel found that Steffen was not negligent. Fischer[1] sued and had better luck with a jury than his insurer did with arbitration—the jury found Steffen to be negligent and awarded damages. The trial court, however, reduced his $12,157.14 jury award for medical expenses by $10,000, citing *Paulson* for the proposition that the subrogation rule trumps the collateral source doctrine in the instant case. Fischer claims that his insurer waived subrogation rights by opting to go to arbitration and he should therefore get the whole amount awarded by the jury under the collateral source doctrine. We disagree and hold that *Paulson* controls. We also reject Fischer's other argument that he is entitled to reasonable costs because of a perceived failure to admit.

---

[1] Actually, Fischer and his wife, Sandra, were co-plaintiffs and are co-appellants here. But when we reference the plaintiffs, we will speak of them in terms of Roger Fischer.

## THE SUBROGATION/COLLATERAL SOURCE ISSUE

### Facts

¶ 2. We will relate the facts necessary for discussing the subrogation/collateral source issue first and then later recite the facts pertinent to the "failure to admit" claim. Fischer and Steffen were in an automobile accident. Fischer was injured and incurred $12,157.14 in medical expenses. Steffen defended on the ground that she "suffered a sudden and incapacitating illness which came upon her without forewarning, which illness [an epileptic seizure] caused her to be . . . unable to operate her motor vehicle." She argued that her conduct, as a matter of law, was excused. American Family Insurance was Fischer's automobile insurer. The policy contained medical expense coverage up to $10,000. Pursuant to that provision, American Family paid Fischer the full $10,000. When Fischer sued Steffen and her insurer, Wilson Mutual, he also named American Family for the purpose of having American Family's interest determined, if any. American Family answered, admitted it had issued a policy to Fischer, and in an amended answer, also asserted that it had paid $10,000 under its medical expense coverage. It claimed a subrogated interest. It also cross-claimed against Steffen and Wilson Mutual for the $10,000 paid. Steffen and Wilson Mutual answered American Family and the issue was joined.

¶ 3. But Wilson Mutual then informed American Family's counsel that American Family had earlier submitted its subrogation claim to binding arbitration where the issue was whether Steffen's conduct was excused by a sudden, incapacitating illness and that American Family lost in arbitration. American Family

then dismissed itself from the lawsuit with prejudice as far as its subrogated interests were concerned.

¶ 4. Fischer forged ahead to trial, and the jury, unlike the arbitration panel, rejected Steffen's defense. Apparently relying on testimony that Steffen had a history of epileptic seizures in the past, the jury rejected her defense that she had an "unforeseen" seizure and found instead that her negligence caused the collision. In pertinent part, by stipulation, the court answered that the medical expenses part of the verdict was $12,157.14.

¶ 5. Fischer moved for judgment on the verdict. Steffen and Wilson Mutual filed a motion for a partial judgment notwithstanding the verdict, asking the trial court to reduce the amount for medical expenses from $12,157.14 to $2,157.14, in recognition of its winning the arbitration. The trial court did so, using *Paulson* as its guide. Fischer appeals that determination.

## Standard of Review

██ ██

¶ 6. Whether an insurer's subrogation rights limit a plaintiff's right to recovery is a question of law that this court reviews "independently of the determination of the circuit court." *See id.*, ¶ 19. Likewise, whether the collateral source rule applies is also a question of law that we review independently, although, in both instances, we are aided by the analysis of the trial court. *See id.*

## Discussion

¶ 7. We first restate the basic premise upon which subrogation is founded. "Subrogation" is the substitution of the insurer *in place of* the insured, to whose

*rights,* the insurer *succeeds in relation to the debt* and gives *to the substitute all the rights, priorities and remedies* of the insured, for whom the insurer is substituted. *See* 16 Lee R. Russ & Thomas F. Segalla, Couch on Ins. 3d, 222:5, at 18 (2005) (hereinafter Couch). In other words, for purposes of this case, once the insurer pays, it has a right to stand in the place of its insured, pursuant to the contract for insurance, and may seek to recoup its outlay from the tortfeasor. *See Paulson,* 263 Wis. 2d 520, ¶¶ 27, 29. And, in such an instance, the insured is normally precluded from seeking the same recovery from the tortfeasor. *See id.* That is because the insurer takes over ownership of the right to seek recovery of that amount from the tortfeasor. *Id.* As a result, this right to subrogation trumps the collateral source rule (the rule that a tortfeasor who is legally responsible for causing injury should not be relieved from an obligation to the victim simply because the victim had the foresight to arrange receipt of benefits for injuries and expenses). *Id.,* ¶¶ 30–32.

¶ 8. There are exceptions to this trumping rule. One notable exception, not present here, is when there is not enough money to make the plaintiff whole. In that situation, where the subrogated insurer and the insured are after the same amount of money, Wisconsin law gives priority to the insured. *Id.,* ¶¶ 22–26 (discussing Wisconsin's *Rimes/Garrity*[2] rule in the context of subrogation). When such is the case, then despite the fact that there is a subrogated interest, the collateral

---

[2] *Rimes v. State Farm Mut. Auto. Ins. Co.,* 106 Wis. 2d 263, 316 N.W.2d 348 (1982); *Garrity v. Rural Mut. Ins. Co.,* 77 Wis. 2d 537, 253 N.W.2d 512 (1977).

source rule takes precedence over any right to subrogation until the victim of the tort is made whole. *See id.,* ¶ 26 & n.3.

¶ 9. A second exception occurs where the subrogee waives its right of subrogation. *See Anderson v. Garber,* 160 Wis. 2d 389, 401 n.5, 466 N.W.2d 221 (Ct. App. 1991). While the right of subrogation arises for the benefit of the insurer, the insurer may waive its right to subrogation, either by contract or by conduct inconsistent with the right of subrogation, and the waiver may be either express or implied.[3] COUCH, § 224:139, at 170. Where the insurer has waived subrogation, it has stepped back out of the insured's shoes and the right reverts to the insured. *C.f. Anderson,* 160 Wis. 2d at 401 n.5. Once waiver occurs, the insurer is not thereafter allowed to seek reimbursement from the tortfeasor. COUCH, § 224:139, at 171. In such an instance, there is no longer any tension between the subrogation rule and collateral source rule and the insured may keep what the tortfeasor is adjudged to owe. *See Anderson,* 160 Wis. 2d at 401–02. As we stated in Anderson, "[w]here an insurer waives its subrogation rights . . . no subrogation exists, and the collateral source rule applies." *Id.* at 401 n.5 (citing *Radloff v. General Cas. Co.,* 147 Wis. 2d 14, 432 N.W.2d 597 (Ct. App. 1988)).

¶ 10. Fischer claims that the waiver exception applies here because American Family waived its subrogation rights when it decided to submit its reimbursement claim against Steffen and Wilson Mutual to arbitration and, then, after the arbitration panel's decision

---

[3] There may be more exceptions, but we do not discuss them.

went against it, dismissed its interest in the lawsuit. In other words, Fischer is claiming waiver by conduct. While Fisher does not exactly say so, we construe his argument to be that, when American Family gambled at arbitration before a lawsuit was even filed and lost, its right to subrogation was over. Therefore, any money which might have been reimbursed to American Family by reason of a lawsuit stayed in the hands of Wilson Mutual and, being in Wilson Mutual's hands, the funds were fair game for Fischer to collect under the collateral source rule.

¶ 11. For Fischer's argument to have any chance of succeeding, he must show us how his case differs from *Paulson*. There, Peggy Paulson, like Fischer, was in a car accident. *Paulson*, 263 Wis. 2d 520, ¶ 4. Her car was damaged. *Id*. And her insurer paid the repair bill. *Id*. Paulson and her husband filed suit against the tortfeasor and her insurer. *Id.*, ¶ 5. The Paulsons also named their own insurer as a defendant due to its status as a subrogated party. *Id*. But before the suit was commenced, the Paulsons' insurer reached an agreement with the tortfeasor's insurer whereby the tortfeasor's insurer agreed to reimburse the Paulsons' insurer for 70% of the repair bill. *Id.*, ¶ 6. When the Paulsons learned about the settlement, they agreed to dismiss their insurer from the case. *Id.*, ¶ 7. In motions in limine prior to trial, the tortfeasor's insurer sought to prohibit any evidence of property damage due to the settlement with the subrogee. *Id.*, ¶ 9. The Paulsons argued, however, that the damages were more than what their insurer paid them. *Id*. The tortfeasor's insurer agreed to pay the Paulsons' insurance deductable and additional amounts not covered by the Paulsons' insurance. *Id.*, ¶¶ 14–15. But the Paulsons also requested, in pertinent part, the difference between

what their insurer paid them and the amount their insurer had been reimbursed. *Id.* In their view, they were entitled to the 30% that the tortfeasor's insurer had saved by the settlement, claiming that the 30% was not part of subrogation and therefore was subject to the collateral source rule. *Id.*, ¶¶ 2–3. The trial court agreed with the tortfeasor's insurer on this issue. *See id.*, ¶ 2.

¶ 12. The supreme court made a public policy choice that the collateral source rule does not suddenly reappear to give a plaintiff, who has been fully reimbursed, access to more money if, as a result of a settlement between the subrogated insurer and the tortfeasor's insurer, the subrogated insurer is not fully reimbursed and the tortfeasor's insurer does not have to pay the full reimbursement. *See id.*, ¶¶ 27, 41. Another way of saying it is this: what the tortfeasor's insurer gets to keep does not become available for the victim to obtain through the collateral source rule, if the victim has already been made whole. The court saw the settlement negotiations between the insurers as merely a means by which two competing insurers would determine who should bear the ultimate loss and, if both insurers agreed to share the loss in some manner, in what proportion. *See id.*, ¶¶ 34–35. In other words, once the plaintiff was paid, what occurred between the two insurers was a matter for the two insurers to decide. The supreme court reasoned that this result, keeping the plaintiff out of the pie to be split between the insurers so long as the plaintiff had already been made whole, encourages settlement of subrogation claims among insurers, reduces litigation expenses and extols freedom of contract. *Id.* So, in spite of the fact that the tortfeasor's insurer did not have to pay a hundred cents on the dollar, the supreme court held

that this does not open the door for the victim to seek the money that the tortfeasor's insurer saved as a result of the settlement negotiations. *See id.*, ¶ 45.

¶ 13. Here, rather than settlement negotiations, the subrogated insurer decided to roll the dice with arbitration. In our view, American Family's decision to arbitrate its claim is similar to the decision made by the Paulsons' insurer to enter into settlement negotiations with the tortfeasor's insurer. In both situations, the two insurers were sparring over who should pay what, after the victim had already been paid the policy limits. Whether by settlement negotiations or by arbitration, the vehicle should not matter; what should matter is that the insurers were acting to resolve the disputed issue that existed between them. So, as we stated above, for Fischer to be successful, he must explain why *Paulson* does not apply.

¶ 14. He tries to do so by arguing that the facts are different here than they were in *Paulson*. In particular, he makes much of American Family's decision to go to arbitration, its initial involvement in the lawsuit that occurred thereafter, its filing of an answer and an amended answer, and its decision to then voluntarily dismiss its right to participate in the lawsuit with prejudice. He thinks that this action by American Family is akin to what happened in *Anderson*. He claims that, there, the subrogated insurer was held to have waived subrogation by failing to file an answer.

¶ 15. But that was not the holding of our court. While it is true that the insurers did not file an answer, we held that the insurers had no duty to file an answer because they should have been joined as plaintiffs. *Anderson*, 160 Wis. 2d at 398–99. Because there was nothing in the record to indicate that the subrogee insurers refused to join the action as plaintiffs, we

394

reasoned that they did not have to file a responsive pleading and were, in reality, joined as party plaintiffs. *Id.* at 399. We then noted, however, that once joined, the subrogee must exercise one of its statutory options under Wis. Stat. § 803.03(2)(b) (2007–08)[4] or lose its subrogation rights to any settlement won by the insured. *Anderson*, 160 Wis. 2d at 399 (citing *Radloff*, 147 Wis. 2d at 18–19). The collateral source rule applied, not because there was no answer, but because the insurers lost their subrogation rights. Thus, the tortfeasor defendant was not exposed to any risk of "double, multiple or otherwise inconsistent obligations" because the insurer's claims were either "assigned, waived or satisfied in the Anderson judgment." *See id.* at 401 n.5.

¶ 16. The foregoing discussion is important because Fischer never makes any argument that American Family failed to exercise the options outlined in Wis. Stat. § 803.03(2)(b). His whole argument seems to be that, while American Family did file an answer and an amended answer, its later action to voluntarily dismiss its claim is, according to Fischer, the same as if American Family had filed no answer at all. In Fischer's view, the actions taken by American Family amounted to a waiver of its right to subrogation by conduct. So, this argument is very much unlike what occurred in *Anderson*.

¶ 17. As to the exact issue that Fischer does appear to raise, we disagree with it. While the Paulsons did not argue waiver by conduct as Fischer does here, *Paulson* still informs us. In both cases, the plaintiff was paid by the subrogated insurer. In both cases, the subrogated insurer immediately acted to protect its

---

[4] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

interests before the insureds even commenced their respective lawsuits. As we have already indicated, in *Paulson*, the subrogated insurer negotiated a settlement agreement with the tortfeasor's insurer. In our case, American Family agreed to arbitration with Wilson Mutual. In neither case did the subrogated insurers give their rights back to the insureds, as the subrogated insurers apparently did in *Anderson*. In neither case did the subrogated insurers ignore their reimbursement rights, but aggressively sought to resolve their reimbursement claims. In fact, one could say that the insurer did more to protect its rights in this case than did the insurer in *Paulson*. While there is nothing in the *Paulson* opinion to suggest that the subrogated insurer filed an answer to the Paulsons' complaint, here, American Family did participate in the litigation by filing two answers and a cross-claim before dismissing.

¶ 18. Also, the fact that, in one case, the insurer negotiated with and settled for seventy cents on the dollar and, in this case, the insurer bet its reimbursement rights on arbitration, should make no difference. Both represented a means by which the insurers could settle their differences between themselves. The fact that American Family so thoroughly lost its gamble does not suddenly mean that it no longer sat in Fischer's shoes. Fischer cannot now get those shoes back and claim that because American Family was not successful at arbitration and Wilson Mutual was able to keep the money that it would otherwise have had to pay American Family, that money is now fair game for him to recover under the collateral source rule. This is really the same argument that the Paulsons made, an argument that our supreme court rejected.

¶ 19. The goal, when deciding subrogation rights vis-á-vis the collateral source rule is to ensure that the

396

tortfeasor pays but does not pay twice for the same thing when the plaintiff's subrogated insurer pursues a claim. And this is exactly the reason why plaintiffs such as Fischer and Paulson believe they should be allowed to recover under the collateral source rule in instances such as theirs—because the tortfeasor not only does not have more than 100% of the claim, the tortfeasor actually ends up paying less than 100%. But our supreme court has decided, as a matter of public policy, that once the plaintiff has been paid in full by the subrogated insurer, that insurer stands in the shoes of the plaintiff. From then on, it is no business of the plaintiff how the subrogated insurer goes about seeking reimbursement for its outlay from the tortfeasor and the tortfeasors insurer. And if the subrogated insurer somehow does not retrieve full reimbursement, it is still not any business of the plaintiff's. Here, when American Family chose to pursue reimbursement through arbitration, it was American Family's decision alone to make. Just because it did not get what it was seeking is no reason to suddenly allow Fischer the power to seek what American Family failed to receive. The result in this case comports with our supreme court's policy decision.

## THE "FAILURE TO ADMIT" ISSUE

### Facts

¶ 20. Fischer moved for costs under WIS. STAT. §§ 804.12(3) and 814.036 on the grounds that he served Steffen with a request to admit that her negligence caused the collision, that she did not suffer an unforeseen epileptic seizure, that she had a history of seizures which had not been cured, and that she had no reasonable expectation that she was cured. Steffen admitted to nothing other than her history of seizures. Following

trial, Fischer asserted that the jury verdict directly refuted her denials and that her denials were not reasonably debatable. The trial court declined to award costs. This is the other issue on appeal.

## Discussion

■■ ■■

¶ 21. The issue is a nonstarter. Fischer's major argument seems to be that the result at arbitration has no relevance to this issue and neither the trial court nor this court should consider it because it was not part of the jury trial. This is nonsense. In determining whether a certain fact was reasonably debatable, we do not look at the facts that were within the knowledge of the party being requested to admit, after the jury trial is over. What we look to are the facts within the knowledge of the person being asked to admit at the time the request to admit was served. *See Nelson v. L. & J. Press Corp.*, 65 Wis. 2d 770, 783–84, 223 N.W.2d 607 (1974). At this point in time, which is the only point in time that matters, Steffen knew that an arbitration panel had already decided the same factual dispute—whether she could reasonably foresee having an epileptic seizure while driving that day—in her favor. Certainly, she had a reasonable belief that a jury might likewise find her to be not negligent under the same set of facts. Fischer also makes much of the fact that Steffen's own doctor did not opine at trial that it was medically probable for Steffen to ever be seizure free. But, as Steffen points out in her brief, she had never—up until the accident —had a grand mal seizure. While she had partial seizures in the past, none ever led to unconsciousness, incapacitated her or impaired her ability to drive. Her own doctor had cleared her to drive. Steffen had good reason to refuse to admit the requests. That the jury

saw it differently than the arbitration panel is good for Fischer, but it does not mean he gets costs.

*By the Court.*—Judgment affirmed.