Roger H. FISCHER, Sr. and Sandra J. Fischer,
Plaintiffs-Appellants-Petitioners,

v.

Pamela A. STEFFEN and
Wilson Mutual Insurance Co.,
Defendants-Respondents,

KOHLER COMPANY and Medicare Secondary Payer
Recovery Contractor, Subrogated Defendants.

Supreme Court

*No. 2009AP1669. Oral argument January 6, 2011.
—Decided May 24, 2011.*

2011 WI 34

(Also reported in 797 N.W.2d 501.)

For the plaintiffs-appellants-petitioners there were briefs and oral argument by *Shawn Brock* and *Wurtz, Roth, Basler & Brock, S.C.*, Sheboygan.

For the defendants-respondents there was a brief and oral argument by *James O. Conway* and *Olsen, Kloet, Gunderson & Conway*, Sheboygan.

An amicus curiae brief was filed by *Mark L. Thompson, Edward E. Robinson, Brett A. Eckstein* and *Cannon & Dunphy, S.C.*, Brookfield, for the Wisconsin Association for Justice.

¶ 1. SHIRLEY S. ABRAHAMSON, C.J.    This is a review of a published decision of the court of appeals,[1] which affirmed the judgment of the circuit court of Sheboygan County, L. Edward Stengel, Judge.

---

[1] *Fischer v. Steffen,* 2010 WI App 68, 325 Wis. 2d 382, 783 N.W.2d 889.

¶ 2.  This review arises from an automobile accident. Roger H. Fischer, Sr. and Sandra J. Fischer, the injured plaintiffs, seek $10,000 from Pamela A. Steffen, the driver defendant; the defendant's insurer is Wilson Mutual Insurance Co.  The $10,000 is the amount received by the plaintiffs from the plaintiffs' insurer, American Family Insurance Company, for medical expenses. The policy maximum for no-fault medical expenses was $10,000.

¶ 3.  The jury found the defendant 100% liable for the plaintiffs' injuries. The jury awarded the plaintiffs $21,000 for pain and suffering and loss of consortium from the defendant. The parties stipulated that $12,157.14 was the reasonable value of past medical expenses; the circuit court entered this amount in the jury verdict.

¶ 4.  The plaintiffs moved for judgment on the verdict, and the defendant filed a motion for partial judgment, asking the circuit court to reduce the award for medical expenses from $12,157.14 to $2,157.14 because the plaintiffs had already recovered $10,000 of the medical expenses from their insurer, American Family. American Family did not recover its subrogation claim for $10,000 against the defendant or her insurer because prior to the plaintiffs' lawsuit an arbitration panel found that the defendant was not negligent and need not pay American Family. The circuit court granted the defendant's motion, ruling that the plaintiffs were not entitled to the disputed $10,000 from the defendant.

¶ 5.  The dispute before this court focuses on whether the circuit court erred in denying the plaintiffs a judgment of $10,000 against the defendant when the defendant did not pay the plaintiffs' insurer $10,000, a sum that represents the insurer's subrogation claim.

¶ 6. With regard to the plaintiffs' past medical expenses, the following are undisputed:

- The reasonable value of plaintiffs' past medical expenses was $12,157.14.

- The plaintiffs' insurer paid the plaintiffs $10,000 (the maximum under the policy) for no-fault medical expenses.

- The plaintiffs' insurer acquired a subrogation claim for $10,000 against the tortfeasor under the subrogation provision in the automobile insurance policy.

- Prior to trial, the plaintiffs' and the defendant's insurers arbitrated the plaintiffs' insurer's subrogation claim. The plaintiffs received no notice of the arbitration and did not participate in the arbitration.

- The arbitration panel determined that the defendant was not causally negligent and that the plaintiffs' insurer had no subrogation claim against the defendant.

- The jury determined that the defendant was 100% causally negligent.

- After trial, the defendant, upon order of the circuit court, paid the plaintiffs $2,157.14 ($12,157.14–$10,000) as reimbursement for medical expenses.

- Neither the defendant nor her insurer reimbursed the plaintiffs' insurer or the plaintiffs $10,000, the sum the plaintiffs' insurer paid the plaintiffs as reimbursement for medical expenses.

¶ 7. The plaintiffs argue that the defendant has paid $10,000 less than the full damages the defendant caused. The plaintiffs assert that the collateral source

rule applies: the defendant should not benefit from the plaintiffs' insurance policy. The plaintiffs contend that American Family's subrogation claim should revert to them, not the defendant, upon application of the collateral source rule.

¶ 8. In contrast, the defendant's position is that the plaintiffs should not obtain a double recovery, that is, the plaintiffs should not recover an additional $10,000 to compensate them for $10,000 in medical expenses already paid to the plaintiffs by their insurer, American Family.

¶ 9. The circuit court denied the plaintiffs judgment for the $10,000 in question, relying on *Paulson v. Allstate Ins. Co.*, 2003 WI 99, 263 Wis. 2d 520, 665 N.W.2d 744. Similarly, the court of appeals, relying on *Paulson,* affirmed the circuit court's judgment that the plaintiff cannot recover the $10,000 in question from the defendant.

¶ 10. In *Paulson,* the court determined that under the facts of that case the injured party's recovery from the tortfeasor was not affected by the subrogated insurer's settlement of its subrogation claim with the tortfeasor for 70% of the full value.[2] The injured party could not recover the subrogated insurer's claim for 30%, which the subrogated insurer did not recover from the tortfeasor.[3]

¶ 11. The *Paulson* court evaluated the interaction of the made whole doctrine, the collateral source rule and subrogation rules.

¶ 12. The *Paulson* court declared that the made whole doctrine was not applicable to the facts of the

[2] *Paulson v. Allstate Ins. Co,* 2003 WI 99, ¶ 27, 263 Wis. 2d 520, 665 N.W.2d 744.

[3] *Id.,* ¶¶ 27, 32.

case inasmuch as no assertion was made that there was an insufficient pool of money to pay damages.[4] "The specter of an insurer competing with the insured for a limited amount of funds is simply not raised by the facts of this case."[5]

¶ 13. With regard to the collateral source rule and subrogation, the *Paulson* court concluded that subrogation trumped the collateral source rule under the facts of that case.[6] To reach this conclusion, the court balanced three equitable considerations at play in the case: placing the full responsibility of the loss on the tortfeasor; discouraging double recovery for the injured party; and encouraging settlement agreements between parties.[7]

¶ 14. The *Paulson* court declared that the settlement agreement relating to the subrogation claim did not reduce the recovery of the injured party.[8]

¶ 15. The *Paulson* court rested its conclusion on the following:

- The injured party's insurer was not competing with the injured party for the same funds.[9]

- Settlement agreements are favored. "Refusing to recognize the [settlement agreement] would inform insurers that there is no point to settlement negotiations, because if the subrogated insurer agrees to

---

[4] *Id.*, ¶¶ 27, 42.

[5] *Id.*, ¶ 27.

[6] *Id.*, ¶ 32.

[7] *Id.*, ¶ 34.

[8] *Id.*, ¶ 42.

[9] *Id.*

take less than the face value of its claim, the plaintiffs will simply get the rest from the tortfeasor's insurer."[10]

- Allowing the injured party (who has already been fully compensated for the loss) to recover the subrogated claim would allow double recovery and discourage settlement negotiations.[11]

¶ 16.  The *Paulson* court concluded: "Where the plaintiff has recovered the reasonable value of his or her expenses and makes no allegation that the agreement [settling the subrogation claim] prevents such recovery, there is no reason to award the plaintiff the difference."[12]

¶ 17.  The holding in *Paulson* was carefully limited to the facts of that case. "[W]e find that, under the limited circumstances presented by this case, Paulson is not entitled to the 30 percent difference between the amount Midwest paid for Paulson's car repairs and the amount it ultimately settled for in its agreement with Allstate."[13]

¶ 18.  After comparing *Paulson* and the instant case, we conclude that in all significant respects the present case is indistinguishable from *Paulson* and that therefore the present case is governed by *Paulson.* Accordingly, we conclude that the collateral source rule does not, under the facts of the present case, entitle the plaintiffs to recover $10,000, the value of their insurer's

---

[10] *Id.*

[11] *Id.,* ¶ 43.

[12] *Id.*

[13] *Paulson,* 263 Wis. 2d 520, ¶ 45. *See also id.,* ¶ 46 (Bradley, J., concurring) ("I write separately to underscore what the majority repeatedly notes: the holding of this case is limited to the facts of this case.").

subrogation claim. For the reasons set forth, we affirm the decision of the court of appeals.

I

¶ 19.  The underlying facts are undisputed, and we shall set them forth in greater detail at this point. As we have stated, this case stems from a car accident. The accident occurred when the defendant had an epileptic seizure.

¶ 20.  American Family Insurance Company, the plaintiffs' insurer, paid the plaintiffs $10,000 for medical expenses under the plaintiffs' auto insurance policy with American Family. Thus, American Family acquired a $10,000 subrogation claim in the plaintiffs' recovery from the defendant.

¶ 21.  Prior to the commencement of the plaintiffs' personal injury action against the defendant, American Family entered into arbitration with the defendant's insurer in an attempt to collect its $10,000 subrogation claim. American Family lost at arbitration. The arbitration panel determined that the defendant's seizure was sudden and unexpected and therefore the defendant was not causally negligent. As a result of the binding arbitration, American Family could not recover its subrogation claim against the defendant.

¶ 22.  The plaintiffs sued the defendant (and her insurer) for damages, including medical expenses, caused by the defendant's negligence. The plaintiffs correctly joined their insurer, American Family, as a party under Wis. Stat. § 803.03(2) (2009–10)[14] inasmuch as American Family had a subrogation claim in

---

[14] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

511

the plaintiffs' recovery from the defendant. American Family filed an answer and a cross-complaint asserting its subrogation claim.

¶ 23. The defendant notified American Family that American Family had divested its subrogation claim as a result of the arbitration proceedings. American Family agreed. American Family and the defendant stipulated to dismissing American Family and the circuit court dismissed American Family's subrogation claim. The plaintiffs were not a party to this stipulation dismissing American Family's subrogation claim.

¶ 24. The plaintiffs proceeded to trial. A jury determined that the defendant was 100% causally negligent. The jury awarded the plaintiffs $21,000 for pain and suffering and for loss of consortium, and $12,157.14, the value of past medical expenses to which the parties stipulated.

¶ 25. Notwithstanding the verdict, the defendant filed a motion for a partial judgment asking the court to reduce the award for past medical expenses by $10,000. This $10,000 was the amount that American Family had previously paid the plaintiffs for their medical expenses; it was the amount of American Family's subrogation claim; and it was the amount that had been the subject of arbitration between American Family and the defendant.

¶ 26. In response to the defendant's motion for a partial judgment, the circuit court reduced the judgment for past medical expenses by the $10,000 that American Family previously had paid to the plaintiffs.

Wisconsin Stat. § 803.03(2) "is intended to foster economy of judicial effort by requiring that all 'parts' of a single cause of action whether arising by subrogation, derivation, or assignment, be brought before the court in one action." Judicial Council Committee's Note, 1974, Wis. Stat. § 803.03.

¶ 27. Relying on *Paulson v. Allstate Ins. Co,* 2003 WI 99, 263 Wis. 2d 520, 665 N.W.2d 744, the circuit court ruled that the collateral source rule was not applicable. Also relying upon the reasoning in *Paulson,* the court of appeals affirmed the judgment of the circuit court.[15]

## II

¶ 28. The present case involves the interaction of three rules of law: the collateral source rule, rules of subrogation, and the made whole doctrine. The application of each of these rules to undisputed facts is a question of law that this court determines independently of the circuit court and court of appeals but benefiting from their analyses.[16]

## III

¶ 29. The three rules, the collateral source rule, rules of subrogation, and the made whole doctrine, have been discussed in numerous cases. We begin by briefly summarizing each rule.

¶ 30. In general, the collateral source rule provides that a tortfeasor's liability to an injured person is not reduced because the injured person receives funds from other sources.[17] The collateral source rule pre-

---

[15] *Fischer v. Steffen,* 2010 WI App 68, 325 Wis. 2d 382, 783 N.W.2d 889.

[16] *See, e.g., Paulson,* 263 Wis. 2d 520, ¶ 19 (subrogation and collateral source rule); *Ruckel v. Gassner,* 2002 WI 67, ¶ 13, 253 Wis. 2d 280, 646 N.W.2d 11 (made whole doctrine).

[17] *See, e.g., Koffman v. Leichtfuss,* 2001 WI 111, ¶ 29, 246 Wis. 2d 31, 630 N.W.2d 201; *Ellsworth v. Schelbrock,* 2000 WI 63, ¶ 7, 235 Wis. 2d 678, 611 N.W.2d 764.

vents payments made by the injured party, such as premiums paid for an insurance policy, from inuring to the benefit of the tortfeasor.[18] The collateral source rule is grounded in two policies: (1) to deter negligent conduct by placing the full cost of the wrongful conduct on the tortfeasor,[19] and (2) to allow the injured party, not the tortfeasor, to benefit from a windfall that may arise as a consequence of an outside payment.[20]

¶ 31. The rules of subrogation provide for the substitution of one party, the subrogee, for another, the subrogor. In the insurance context, subrogation is a derivative right that permits an insurer to step into the shoes of the insured and to pursue recovery from the tortfeasor to the extent of the insurer's payments to the subrogor (the insured).[21] Subrogation ensures that the loss is ultimately placed upon the tortfeasor and prevents the subrogor (the injured party) from being unjustly enriched through double recovery.[22]

¶ 32. The made whole doctrine prevents competition between the injured party and the subrogated party (the insurer) when the injured party's damages exceed a limited pool of funds from which recovery may be had. Under the made whole doctrine, the injured

---

[18] *Koffman,* 246 Wis. 2d 31, ¶ 40.

[19] *Ellsworth,* 235 Wis. 2d 678, ¶ 7.

[20] *Koffman,* 246 Wis. 2d 31, ¶ 29.

[21] *Muller v. Society Ins.,* 2008 WI 50, ¶¶ 22–25, 309 Wis. 2d 410, 750 N.W.2d 1; *Paulson,* 263 Wis. 2d 520, ¶ 29; *Koffman,* 246 Wis. 2d 31, ¶ 33; *Wilmot v. Racine County,* 136 Wis. 2d 57, 63, 400 N.W.2d 917 (1987).

[22] *See, e.g., Muller,* 309 Wis. 2d 410, ¶¶ 23–24; *Ruckel,* 253 Wis. 2d 280, ¶¶ 14–15; *Koffman,* 246 Wis. 2d 31, ¶¶ 33, 40.

party should be the first to tap into the limited pool of funds and recover on any loss. When someone can not be fully paid, the loss should be borne by the subrogee (the insurer).[23]

¶ 33. In sum, the three rules ordinarily work in tandem. The collateral source rule prevents tortfeasors from being relieved of their obligations by payments to an injured party from an outside source. The rules of subrogation likewise ensure that the loss ultimately falls on the tortfeasor and also prevent an injured party from receiving a double recovery.[24] Finally, the made whole doctrine ensures that in a situation when there are not sufficient funds to make the injured party whole, the injured party has priority over the subrogee (the insurer) in recovering from the limited pool of funds.

¶ 34. These three rules are equitable doctrines and ordinarily work together to further the goals of ensuring that injured people recover for their loss and that tortfeasors pay for the damages they inflict. These equitable doctrines do not, however, lend themselves to the application of black-letter rules.[25] The interaction and the application of the collateral source rule, rules of subrogation, and the made whole doctrine are heavily influenced by the facts.[26]

---

[23] *Muller,* 309 Wis. 2d 410, ¶¶ 27–47; *Garrity v. Rural Mut. Ins. Co.,* 77 Wis. 2d 537, 542, 253 N.W.2d 512 (1977); *Rimes v. State Farm Mut. Auto. Ins. Co.,* 106 Wis. 2d 263, 275–76, 316 N.W.2d 348 (1982).

[24] *Koffman,* 246 Wis. 2d 31, ¶ 40.

[25] *Muller,* 309 Wis. 2d 410, ¶ 26; *Schulte v. Frazin,* 176 Wis. 2d 622, 628, 500 N.W.2d 305 (1993).

[26] *Paulson,* 263 Wis. 2d 520, ¶ 17; *Muller,* 309 Wis. 2d 410, ¶ 26.

¶ 35. *Paulson,* the case relied upon by both the circuit court and the court of appeals in deciding the present case, involved the interplay of these three rules.[27] We turn to *Paulson* to determine whether *Paulson* and the present case are significantly similar and whether the present case should be governed by *Paulson.*

IV

¶ 36. *Paulson* similarly arose out of a car accident. Paulson suffered personal injury and property damage.[28] Paulson presented a claim to her insurer for the cost of repairing her vehicle, and her insurer paid the full cost of repair (less the policy's deductible).[29]

¶ 37. Paulson, along with her husband and daughter, filed suit against the tortfeasor, claiming property damage; medical expenses; lost wages; pain and suffering; and loss of society, companionship, services, and consortium.[30] Paulson appropriately joined her insurer as a party based on its subrogation claim.[31]

¶ 38. Prior to the filing of the suit, however, Paulson's insurer negotiated a settlement agreement with the tortfeasor's insurer for its subrogation claim arising from its payment to Paulson for property damage.[32] Calculating comparative negligence, Paulson's insurer accepted a reduced payment of 70% of the

---

[27] *Paulson,* 263 Wis. 2d 520, ¶ 17.

[28] *Id.,* ¶ 4.

[29] *Id.*

[30] *Id.,* ¶ 5.

[31] *Id.*

[32] *Id.,* ¶ 6.

property damage to settle its subrogation claim.[33] On the basis of this settlement agreement, Paulson's insurer moved to be dismissed from Paulson's lawsuit against the tortfeasor, thereby giving up its subrogation claim. The circuit court granted Paulson's insurer's motion for dismissal.[34]

¶ 39.  The tortfeasor in *Paulson* failed to answer the complaint timely, and the circuit court entered a default judgment in favor of Paulson.[35] By the time the case was presented for review in this court, further settlements between the parties had occurred. The only remaining issue before the supreme court was whether Paulson was entitled to recover \$2,112.73 from the tortfeasor, the 30% difference between the amount Paulson's insurer paid Paulson (\$7,542.44) and the amount the tortfeasor paid Paulson's insurer for the subrogation claim (\$4,929.71).[36]

¶ 40.  The *Paulson* court analyzed the interplay of the collateral source rule, the rules of subrogation, and the made whole doctrine in light of the facts of that case. As we explained previously, the *Paulson* court concluded that the made whole doctrine did not apply; that Paulson's insurer settled its subrogation claim for less than the full amount; that the collateral source rule was trumped by subrogation; and that Paulson could not recover from the defendant that part of the subrogation claim that the subrogated insurer did not recover.[37]

---

[33] *Id.*
[34] *Id.,* ¶ 7.
[35] *Id.,* ¶ 8.
[36] *Id.,* ¶ 13.
[37] *Id.,* ¶¶ 27, 32.

¶ 41. The *Paulson* court concluded: "Where the plaintiff has recovered the reasonable value of his or her expenses and makes no allegation that the agreement prevents such recovery, there is no reason to award the plaintiff the difference."[38] Awarding the injured party the difference between the amount its insurer paid her and the amount for which the insurer settled its subrogation claim would allow the injured party a double recovery and would discourage settlement negotiations.[39] The *Paulson* court determined that the policy underlying the collateral source rule—placing the full responsibility of the loss on the tortfeasor—was not harmed under the facts of that case. Therefore, the *Paulson* court favored a result that supported the long-standing policy encouraging settlement between the parties and the policy disfavoring double recovery.[40]

¶ 42. The facts and circumstances of the litigation in *Paulson* were complex, but the ultimate facts before the *Paulson* court in determining the amount the tortfeasor owed Paulson by reason of the insurers' negotiated settlement appear straightforward and are comparable to the facts of the present case.

¶ 43. If *Paulson* governs the present case, the decision of the court of appeals would be affirmed.

V

¶ 44. The plaintiffs allege that significant differences exist between the instant case and the *Paulson* case.

¶ 45. First, the plaintiffs and the amicus, Wisconsin Association for Justice, assert that the plaintiffs'

---

[38] *Id.*, ¶ 43.
[39] *Id.*
[40] *Id.*, ¶ 41.

personal injury claim in the present case (in contrast to the property damage claim in *Paulson*) was indivisible and was the plaintiffs' alone to advance, and that American Family had no right to settle its subrogation claim until the plaintiffs had resolved their claims.

¶ 46.   We agree with the plaintiffs that this court has stated that subrogation does not create a new cause of action separate from the injured party's cause of action.[41] Nevertheless, this court has acknowledged that although there is one indivisible claim, subrogation creates an interest in the subrogee (the insurer) that is not wholly intertwined with that of the insured.

¶ 47.   In *Lambert v. Wrensch*, 135 Wis. 2d 105, 107, 399 N.W.2d 369 (1987), for example, the insurer paid the injured party's medical expenses, but the insurer was barred by operation of the statute of limitations from pursuing its subrogation claim arising from those payments.[42] The injured party, however, was still able to maintain its action against the tortfeasor for damages, although reduced by the amount previously received for medical expenses.[43] *Lambert* has been interpreted as holding that "where the insurer is barred from pursuing a claim [of subrogation], the tortfeasor is

[41] *Wilmot,* 136 Wis. 2d at 63; *Muller v. Society Ins.,* 2008 WI 50, ¶ 53, 309 Wis. 2d 410, 750 N.W.2d 1 ("[A]n insurer whose policy with an insured includes a right to subrogation possesses an independent 'cause of action against the tortfeasor and the tortfeasor's insurer for its subrogated interest.' The interests of the insurer and insured exist as 'each owning separately a part of the claim against the tortfeasor' " (citations omitted).).

[42] *Lambert v. Wrensch,* 135 Wis. 2d 105, 107, 399 N.W.2d 369 (1987)

[43] *Id.* at 118–20.

519

entitled to a reduction in judgment for the amount of that claim."[44]

¶ 48. In the present case, the insurer, American Family, is barred by binding arbitration from pursuing its subrogation claim. If *Lambert* is applied, the defendant is entitled to a reduction in judgment for the amount of the insurer's subrogation claim.

¶ 49. Thus, we are not persuaded that characterizing the plaintiffs' personal injury claim as indivisible and characterizing the subrogation claim as inseparable from the plaintiffs' elements of loss distinguish the present case from *Paulson* or justify a different result.

¶ 50. Second, relying on the made whole doctrine and the concept that personal injury claims are indivisible, the plaintiffs contend that a subrogated insurer cannot settle its subrogation claim until the plaintiffs are made whole. The plaintiffs assert that the court of appeals allowed American Family to step ahead of the plaintiffs' claims.

¶ 51. This argument also fails to justify a different result than that reached in *Paulson*. Nowhere do the plaintiffs show that they were not made whole. In the present case, the plaintiffs stipulated to the reasonable value of the medical services. It is clear from the record that the defendant's insurance policy was more than sufficient to cover all of the damages suffered by the plaintiffs. The made whole doctrine is therefore not applicable in the present case, just as the made whole doctrine was not applicable in *Paulson*.[45]

---

[44] *Voge v. Anderson,* 181 Wis. 2d 726, 732, 512 N.W.2d 749 (1994), *quoted with approval in Koffman,* 246 Wis. 2d 31, ¶ 39.

[45] The made whole doctrine was not applicable in *Paulson.* Paulson made no assertion that there was an insufficient pool of

¶ 52. Third, the plaintiffs suggest that the present case and *Paulson* differ because here the two insurers settled the subrogation claim by entering into binding arbitration, while in *Paulson* the insurers settled the subrogation claim by negotiation. Settlement through negotiation versus settlement through arbitration is a distinction without a difference for purposes of applying the teachings of *Paulson*.

¶ 53. Fourth, the plaintiffs attempt to distinguish *Paulson* and the instant case because here American Family received nothing for its subrogated claim, while in *Paulson,* the subrogated insurer settled for 70% of the value of its subrogation claim.

¶ 54. In *Paulson,* the insurers agreed that the injured party was contributorily negligent. The *Paulson* court concluded that "[i]n the context of contributory negligence, the tortfeasor has paid the full amount of the damage caused and the plaintiff, by fully recovering for the repair costs, has received whatever 'windfall' is created by the settlement."[46]

¶ 55. In the present case, the arbitration panel found (and the insurers agreed) that the defendant was not causally negligent, and in the context of that finding the tortfeasor did not have to pay the subrogated insurer anything. Nevertheless, a jury found the defendant 100% causally negligent. The plaintiffs in the instant case fully recovered their medical expenses through payment by their insurer ($10,000) and payment by the defendant ($2,517.14).

money. The competition between the insured and insurer for a limited amount of funds was not raised by the facts. *Paulson,* 263 Wis. 2d 520, ¶ 27.

[46] *Paulson,* 263 Wis. 2d 520, ¶ 44.

¶ 56. Nothing in *Paulson* leads to the conclusion that the result in *Paulson* depends on the percentage the subrogated insurer recovers or fails to recover for its subrogation claim.

¶ 57. Fifth and finally, the plaintiffs argue that in the instant case they did not agree to American Family's dismissal from the action, whereas in *Paulson* the injured party agreed to allow its insurer to be dismissed from the lawsuit. The plaintiffs seem to be arguing that American Family has waived its subrogation claim and that under the collateral source rule a windfall created by a waived subrogation claim should inure to the plaintiffs, not to the defendant.[47]

¶ 58. Relying on *Radloff v. General Casualty Co.*, 147 Wis. 2d 14, 432 N.W.2d 597 (Ct. App. 1988), the plaintiffs assert that American Family lost its subrogation claim when it agreed to be dismissed from the case with prejudice. We disagree with the plaintiffs' reading of *Radloff,* and conclude that *Radloff* is inapposite.

¶ 59. In *Radloff,* the subrogated insurer (who was a party to the lawsuit) played no role in the lawsuit and exercised no option under Wis. Stat. § 803.03(2).[48] The *Radloff* court held that the insurer lost its subrogation claim.

---

[47] If a subrogee waives a subrogation claim the collateral source rule applies to allow the injured party to recover and get a windfall. *See Voge,* 181 Wis. 2d at 728, 730–33.

[48] Once joined, a subrogated party has the following options under Wis. Stat. § 803.03(2):

a. Participate in the litigation.

b. Agree to have his or her interest represented by the party who caused the joinder.

c. Move for dismissal with or without prejudice.

¶ 60. Unlike the subrogated insurer in *Radloff,* American Family assiduously pursued its subrogation claim.

¶ 61. American Family arbitrated its subrogation claim. Furthermore, when the plaintiffs joined American Family in the lawsuit pursuant to Wis. Stat. § 803.03(2), American Family filed an answer and cross-complaint in the plaintiffs' lawsuit asserting its subrogation claim. Only after these active assertions did American Family seek dismissal of its subrogated claim.[49] At every step, American Family pressed its subrogation claim. Therefore, American Family's conduct is inconsistent with the concept of waiver.[50]

¶ 62. American Family's situation is analogous to that of the subrogated insurers in *Paulson* and *Lambert.* In *Paulson,* the subrogated insurer moved to be dismissed from the case because the settlement of its subrogation claim with the tortfeasor's insurer barred the subrogation claim.[51] In *Lambert,* the subrogated insurer was barred from advancing its subrogation claim by the statute of limitations.[52] In both *Paulson* and *Lambert* the insurers' subrogation claims were not viewed as lost; the insurer's subrogation claims did not inure to the injured party.

---

[49] *See, e.g., Ryan v. Sigmund,* 191 Wis. 2d 178, 182–83, 528 N.W.2d 43 (Ct. App. 1995) (determining *Radloff* was inapposite, when the subrogated insurer filed an answer, counterclaim, and cross-claim asserting its subrogation interest, but later sought and obtained the court's permission to be excused from further participation in the litigation).

[50] *Ryan,* 191 Wis. 2d at 183 ("[The subrogee's] request not to participate in the trial under these circumstances did nothing to impair the efficient and orderly disposition of the case").

[51] *Paulson,* 263 Wis. 2d 520, ¶ 32.

[52] *Lambert,* 135 Wis. 2d at 107.

¶ 63.   The distinction the plaintiffs try to draw is that the dismissal here, unlike the dismissals in *Paulson* and *Lambert,* was not done with the agreement of, or upon the motion of, the injured party. Further, the plaintiffs attempt to portray the arbitration as "secret" in that the plaintiffs were not given notice and did not have the opportunity to participate. We conclude that this distinction does not support a different result. American Family's settlement and dismissal (whether with or without the plaintiffs' participation or agreement) does not affect the plaintiffs' ability to recover the reasonable value of medical services. The important factor in the present case, as in *Paulson* and *Lambert,* is that the subrogated insurer may separately pursue its subrogation claim through a settlement agreement without affecting the injured party's ability to recover for the injury.

¶ 64.   We further support our conclusion by examining *Voge v. Anderson,* 181 Wis. 2d 726, 512 N.W.2d 749 (1994). Voge presented two issues and the court rendered two rulings—one relating to UIM payments and the other relating to medical benefits payments. Our conclusion in the present case is supported by both rulings in *Voge.* The second ruling is directly on point.

¶ 65.   With regard to the UIM ruling in the *Voge* case:   In *Voge,* American Family paid its insured, the injured party, $150,000 UIM benefits after a jury verdict. It also entered into a stipulation with its insured, the injured party, stating that American Family "waived any and all subrogation rights which it may have had to seek reimbursement" from the tortfeasor or the tortfeasor's insurance company.[53]

---

[53] The jury found the injured party 15% contributorily negligent. *Voge,* 181 Wis. 2d at 729.

¶ 66.   The tortfeasor and the tortfeasor's insurance company asserted that they were entitled to a reduction in judgment in the amount of $150,000 for the UIM benefits paid by American Family. The court held against the tortfeasor's insurance company on the ground that American Family had waived its right to subrogation and thus the collateral source rule applied.[54] The court reasoned that American Family "explicitly waived its rights to subrogation and thus never possessed the right to recover the UIM benefits; the claim to recover such damages remained at all times with [the injured party]."[55] Thus, the collateral source rule, not subrogation, governed the UIM payments.[56] The insured got the windfall created by American Family's waiver of its subrogation rights, not the tortfeasor.

¶ 67.   In contrast to *Voge,* in the present case, as in *Paulson,* the subrogated insurance company did not explicitly waive its subrogation rights. Accordingly, the UIM ruling in *Voge* supports our conclusion in the present case.

¶ 68.   With regard to the medical benefits ruling in the *Voge* case:   Prior to commencement of the *Voge* lawsuit, American Family paid its insured no-fault medical payments in the amount of $5,895.75 under the automobile insurance policy (in contrast with the UIM portion of the policy). American Family did not waive its rights to subrogation for that amount.[57]

¶ 69.   Also, before commencement of the injured party's lawsuit, American Family pursued and settled its subrogation claim arising from the medical payments

---

[54] *Id.* at 732.

[55] *Id.*

[56] *Id.* at 732–33.

[57] *Id.* at 730.

through arbitration with the tortfeasor's insurance company.[58] American Family recovered 70% of its medical payments from the tortfeasor's insurance company through arbitration.[59]

¶ 70.   In its answer to the injured party's complaint, American Family, the subrogated insurer, stated that it would waive any rights to subrogation for the medical payments.[60] The *Voge* court concluded that this waiver (after an arbitration proceeding with the tortfeasor's insurance company) was unenforceable. The court concluded that the insurer had already pursued its subrogation rights through arbitration and recovered the amount it was entitled to recover from the tortfeasor's insurance company.[61]

¶ 71.   The *Voge* court held that "[u]nlike the UIM benefits, then, the right to recover the medical payments was never possessed by Voge [the injured party]. Thus, Voge is not entitled to recover for such expenses."[62] The *Voge* court concluded that the tortfeasor's insurance company is entitled to a reduction in the jury award equal to the medical expenses paid to the injured party by the injured party's subrogated insurance company.[63]

¶ 72.   The present case, like *Voge,* involves no-fault medical payments made by the injured party's insurance company to the injured party; a subrogated insurance company that did not explicitly waive its subrogation rights; and two insurance companies that

---

[58] *Id.* at 733–34.

[59] *Id.*

[60] *Id.*

[61] *Id.*

[62] *Id.* at 734.

[63] *Id.* at 733–34.

arbitrated the subrogation rights prior to commencement of the injured party's lawsuit.

¶ 73. Applying the teachings of *Voge v. Anderson* supports our conclusion that the plaintiffs in the present action are not entitled to recover the value of American Family's subrogation claim that American Family pursued and lost in arbitration.

¶ 74. We conclude that in all significant respects the present case is indistinguishable from *Paulson,* and that therefore the present case is governed by *Paulson.* Accordingly, we conclude that the collateral source rule does not, under the facts of the present case, entitle the plaintiffs to recover $10,000, the value of their insurer's subrogation claim. For the reasons set forth, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 75. ANN WALSH BRADLEY, J. *(dissenting).* The made whole doctrine, subrogation, and the collateral source rule are all equitable doctrines. Generally, the order of equitable priorities is stated as follows: The injured party has greater equity than the subrogated insurer, while the subrogated insurer has greater equity than third parties who tortiously caused the loss. III Russell M. Ware, *Law of Damages in Wisconsin* § 32.6 (5th ed. 2010) (citing *First Nat. Bank of Columbus v. Hansen,* 84 Wis. 2d 422, 267 N.W.2d 367 (1978); *Waukesha Sav., Bldg. & Loan Ass'n v. Hamill,* 203 Wis. 414, 232 N.W. 877 (1931); *Valley Bancorp. v. Auto Owners Ins. Co.,* 212 Wis. 2d 609, 569 N.W.2d 345 (Ct. App. 1997)).

¶ 76. Examining the application of these three equitable doctrines in a particular case is a fact-intensive inquiry. *See Koffman v. Leichtfuss,* 2001 WI

111, ¶ 26, 246 Wis. 2d 31, 630 N.W.2d 201. Both the analysis and the result depend on the unique circumstances of the case. *Paulson v. Allstate Ins. Co.*, 2003 WI 99, ¶ 17, 263 Wis. 2d 520, 665 N.W.2d 744.

¶ 77.   This case involves many unique circumstances. Here, the jury determined that the tortfeasor was 100 percent negligent. In stark contrast, during arbitration the tortfeasor was determined to be negligence free. The binding arbitration was done without any knowledge of the plaintiff so that traditional concepts of issue preclusion cannot apply. American Family voluntarily dismissed its subrogation claim with prejudice, and with the approval of everyone but the plaintiff. Perhaps the most unusual fact in this case is that there is an "extra" $10,000.

¶ 78.   Under the unique facts of this case, how should these three equitable doctrines be applied? Who is entitled to recover the $10,000 windfall?

¶ 79.   As the majority aptly explains, the plaintiffs have been fully compensated for their loss. Accordingly, the made whole doctrine is not implicated by the facts of this case. Majority op., ¶ 51.

¶ 80.   Likewise, I conclude that the rule of subrogation is not determinative here. There is no subrogated party that can assert a subrogation interest in this case. American Family lost in binding arbitration and voluntarily dismissed its subrogated claim with prejudice.

¶ 81.   Under the collateral source rule, neither the tortfeasor nor its insurer is entitled to the extra $10,000. As Justice Prosser correctly explains in his dissent, the collateral source rule in part provides that windfalls should not inure to the benefit of the tortfeasor or its insured. Rather, any windfall should inure to the benefit of the injured parties. Justice Prosser's

dissent, ¶ 108 (citing *Ellsworth v. Schelbrock,* 2000 WI 63, 235 Wis. 2d 678, 611 N.W.2d 764).

¶ 82.  Although the parties vigorously debate the interplay of these three equitable doctrines, I conclude that under the unique facts of this case, it is only the collateral source rule that is at play. In applying the collateral source rule, I conclude that the circuit court erred when it determined that the windfall of the "extra" $10,000 should inure to the benefit of the tortfeasor and its insured.

¶ 83.  The arguments of the parties give rise to a number of difficult questions that need not be resolved to address the issues presented here. Left unanswered are the tougher questions for future cases.

¶ 84.  Does the majority's analysis, which involved American Family's medical pay claim of a relatively small sum certain amount, apply equally to the large subrogation claim of a health insurer? What are the consequences of permitting a subrogated insurer to seek recovery against the tortfeasor first, at a point in time when it is unknown whether the injured party will be made whole? If a subrogated interest in a personal injury case is settled through arbitration before the plaintiff is made whole, what happens if it is later determined that there is insufficient money for the injured party to be fully compensated? Would the subrogated insurer be required to relinquish the money it received in arbitration to make the injured party whole? Does the injured party's knowledge or ignorance of the subrogated insurer's intent to proceed against the tortfeasor make any difference when evaluating the equities of the case?

¶ 85.  For the time being, these difficult questions remain unanswered. The interaction between the three equitable doctrines can be complex and is driven by the

specific facts of a case. Because I conclude that the collateral source rule governs the outcome of this case, I respectfully dissent.

¶ 86. DAVID T. PROSSER, J. (*dissenting*). This case is not governed by *Paulson v. Allstate Ins. Co.*, 2003 WI 99, 263 Wis. 2d 520, 665 N.W.2d 744. By holding that it is, the court is damaging the right of many plaintiffs to secure a fair recovery for their personal injuries.

¶ 87. To understand this case, it is important to understand the facts. Roger H. Fischer, Sr. and Sandra J. Fischer are husband and wife. They purchased an automobile insurance policy from American Family Insurance Company. The Fischer policy included coverage for $10,000 in medical expenses if one of the insureds were involved in an automobile accident.

¶ 88. Roger Fischer was involved in such an accident. He suffered personal injuries and $12,157.14 in medical expenses. The most that American Family was required to pay under the policy was $10,000 toward Fischer's medical expenses.

¶ 89. The accident was not caused by Roger Fischer. It was caused entirely by Pamela Steffen. Steffen and her insurer, Wilson Mutual Insurance Company, contended that while Steffen caused the accident, she was excused from liability because she suffered a sudden, incapacitating illness immediately prior to the accident. There is no suggestion that in making this defense of its insured Wilson Mutual was acting in any inappropriate way.

¶ 90. Thus, for Roger Fischer to recover his *full* medical expenses and any damages resulting from his personal injuries, he and his wife were required to file suit against Pamela Steffen and/or Wilson Mutual, and they did.

¶ 91. As the majority notes, a jury found Steffen 100 percent liable for Roger Fischer's injuries. Majority op., ¶ 3. The jury awarded the Fischers a total of $21,000 for his pain and suffering and her loss of consortium, while the parties stipulated to $12,157.14 as the reasonable value of Roger's past medical expenses. *Id.*

¶ 92. Before the Fischers ever filed suit, American Family and Wilson Mutual arbitrated American Family's subrogation claim for the $10,000 it had paid to Roger under the Fischers' policy. American Family wanted Wilson Mutual to reimburse American Family for all or part of this payment. The Fischers received no notice of this arbitration and did not participate in it. However, they were clearly affected by the decision of the arbitration panel, that Steffen was not causally negligent and that American Family had no subrogation claim against either Steffen or Wilson Mutual. Inevitably, Wilson Mutual's victory in the arbitration proceeding stiffened its resistance to paying any money for Fischer's medical bills and the other damages.

¶ 93. After the jury trial, Wilson Mutual moved to reduce the award of $12,157.14 in medical expenses to $2,157.14 as Roger Fischer had already recovered $10,000 in medical expenses from his own insurer. The circuit court granted that motion.

¶ 94. The issue before this court is whether the circuit court erred in reducing the jury's verdict for Roger Fischer's medical expenses from $12,157.14 to $2,157.14 on grounds that Fischer was not entitled to keep the $10,000 because it would amount to a double recovery.

I

¶ 95. The most striking fact about this case is that defendant Steffen caused $12,157.14 in medical ex-

penses to the Fischers but has been relieved of the burden of paying all but $2,157.14 toward these expenses. Even though total medical expenses were *stipulated* by the parties and *found* by the jury, the circuit court overturned part of the jury's verdict on policy grounds. As a result, the Fischers are being punished for their foresight in purchasing automobile insurance with coverage for medical expenses, while Wilson Mutual receives a $10,000 windfall.

¶ 96.    The majority is untroubled by this result and appears unconcerned about various other inequities in this case.

II

¶ 97.    The Fischers' automobile insurance policy with American Family had a subrogation component. If the Fischers had filed suit against Steffen and Wilson Mutual before American Family had taken any arbitration action vis-à–vis Wilson Mutual, the Fischers would have been *required* to join American Family in their suit.

¶ 98.    Wisconsin Stat. § 803.03(1) provides:

A person who is subject to service of process *shall* be joined as a party in the action if:

(a) In the person's absence complete relief cannot be accorded among those already parties; or

(b) *The person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may:*

1. *As a practical matter impair or impede the person's ability to protect that interest;* or

2. Leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his or her claimed interest. (Emphasis added.)

532

¶ 99. The emphasized portion of the statute would have governed American Family's right to be joined in the suit, inasmuch as any mishandling of the suit by the Fischers would have "impair[ed] or impede[ed]" American Family's subrogation rights.

¶ 100. The general principle stated in subsection (1) is made explicit in Wis. Stat. § 803.03(2)(a): "A party asserting a claim for affirmative relief shall join as parties to the action all persons who at the commencement of the action have claims based upon subrogation to the rights of the party asserting the principal claim."

¶ 101. Subsection (2)(a) then states the converse principle: "Any party asserting a claim based upon subrogation to part of the claim of another . . . *shall join* as a party to the action the person to whose rights the party is subrogated." Wis. Stat. § 803.03(2)(a) (emphasis added).

¶ 102. There is no contention here that Wis. Stat. § 803.03 applies to arbitration proceedings. Nonetheless, the principles embedded in this statute are salutary. The Fischers followed those principles. The insurance company did not. If American Family had won the arbitration, it might have softened up Wilson Mutual and encouraged it to make a reasonable settlement offer to the Fischers for medical expenses and other damages. However, American Family lost the arbitration and that loss discouraged settlement and impeded the Fischers' ability to achieve a reasonable settlement without going to trial.

¶ 103. If there had been no prior arbitration between American Family and Wilson Mutual, American Family would have had several options with respect to the Fischers' suit:

(a) It could have participated in the prosecution of the action;

(b) It could have agreed to have its interest represented by the Fischers; or

(c) It could have moved to dismiss its participation with or without prejudice.

*See* Wis. Stat. § 803.03(2)(b)1.a.-c.; majority op., ¶ 59 n.48.

¶ 104. If American Family had participated in the prosecution of the action, it no doubt would have had legal expenses. If it had agreed to have its interest represented by the Fischers and the Fischers had prevailed (as they did), the Fischers' attorneys would have been "awarded reasonable attorney fees [from American Family] by the court." Wis. Stat. § 803.03(2)(b)3. These attorney fees would have helped finance the Fischers' entire litigation. Instead, the Fischers had to proceed alone. Because of the circuit court's ruling on the $10,000 in medical expenses, the Fischers' attorney fees necessarily take a big bite out of their reduced recovery.

### III

¶ 105. The majority opinion asserts that this case involves the intersection of three rules of law: the collateral source rule, the subrogation rule, and the made whole doctrine. Majority op., ¶ 28. Although I agree that all three rules are implicated, I do not agree with the court's analysis and application of them.

### A. Collateral Source Rule

¶ 106. Under the collateral source rule, the amount of damages awarded to a person injured because of another person's tortious conduct is not reduced when the injured party receives compensation from another source, such as insurance. *Ellsworth v. Schelbrock,* 2000

534

WI 63, ¶ 1, 235 Wis. 2d 678, 611 N.W.2d 764 (citing *Payne v. Bilco Co.,* 54 Wis. 2d 424, 433, 195 N.W.2d 641 (1972)). This rule has been part of Wisconsin tort law since at least 1908. *Gatzweiler v. Milwaukee Elec. Ry. & Light Co.,* 136 Wis. 34, 116 N.W. 633 (1908).

¶ 107. "Early cases discussing the collateral source rule addressed whether insurance payments or continued wages should reduce an injured plaintiff's damages." *Lagerstrom v. Myrtle Werth Hosp.,* 2005 WI 124, ¶ 126, 285 Wis. 2d 1, 700 N.W.2d 201 (Prosser, J., dissenting). Eventually the court considered medical expenses. *See McLaughlin v. Chicago, Milwaukee, St. Paul & Pac. R.R. Co.,* 31 Wis. 2d 378, 395–96, 143 N.W.2d 32 (1966); *Thoreson v. Milwaukee & Suburban Transp. Corp.,* 56 Wis. 2d 231, 244, 201 N.W.2d 745 (1972); *Merz v. Old Republic Ins. Co.,* 53 Wis. 2d 47, 53–54, 191 N.W.2d 876 (1971); *Rixmann v. Somerset Pub. Schs.,* 83 Wis. 2d 571, 575–83, 266 N.W.2d 326 (1978).

¶ 108. In *Ellsworth,* the court explained the collateral source rule:

> Our tort law applies the collateral source rule as part of a policy seeking to "deter negligent conduct by placing the full cost of the wrongful conduct on the tortfeasor." *American Standard Ins. Co. v. Cleveland,* 124 Wis. 2d 258, 264, 369 N.W.2d 168 (Ct. App. 1985). The tortfeasor who is legally responsible for causing injury is not relieved of his obligation to the victim simply because the victim had the foresight to arrange, or good fortune to receive, benefits from a collateral source for injuries and expenses.

*Ellsworth,* 235 Wis. 2d 678, ¶ 7. The court went on to quote approvingly from *Campbell v. Sutliff,* 193 Wis. 370, 374, 214 N.W. 374 (1927):

> We see no reason why one whose acts have caused injury to another should reap the entire benefit that

comes from the payment of wages made by an employer, either as a gratuity . . . or because such payments are required by contract. Such payments do not change the nature of the injury which the employee sustains through the wrongful acts of the tortfeasor. If either is to profit by the payments . . . , it should be the person who has been injured, not the one whose wrongful acts caused the injury.

*Id.*

¶ 109. In *Voge v. Anderson,* 181 Wis. 2d 726, 732–33, 512 N.W.2d 749 (1994), the court said: "[T]he collateral source rule requires that the tortfeasor be held responsible for his conduct by requiring the tortfeasor to compensate the injured party the full amount of damages." Because *Voge* appears relevant, the majority attempts to distinguish the case on its facts. Majority op., ¶¶ 64–72. It cannot reasonably do so.

¶ 110. In *Voge,* the plaintiff was injured in an automobile accident and he brought suit against the driver, Anderson, and his insurer, Illinois Farmers Insurance Company. *Voge,* 181 Wis. 2d at 728–29. The plaintiff, Voge, was insured by American Family Mutual Insurance Company under a policy that included an express subrogation clause. *Id.* at 729. Similar to the situation here, Voge brought suit against Anderson and Illinois Farmers, and also named American Family. *Id.* A jury trial resulted in a large verdict for Voge[1] which exceeded the liability limits on Anderson's policy. *Id.* Consequently, American Family paid $150,000 to Voge in underinsured motorist (UIM) benefits under his policy, and then waived its subrogation rights against Anderson and Illinois Farmers. *Id.* at 729.

[1] The jury found Voge 15 percent causally negligent and Anderson 85 percent causally negligent for the accident. *Voge v. Anderson,* 181 Wis. 2d 726, 729, 512 N.W.2d 749 (1994).

¶ 111.  Illinois Farmers and Anderson asserted that they were entitled to a reduction in the judgment against them in the amount of American Family's payment to Voge under his policy. *Id.* at 730. The court relied on the binding waiver entered into by the parties to find that the collateral source rule applied and the defendants were not entitled to a reduction of benefits. *Id.* The court explained:

> Assignment of a claim by means of subrogation is not automatic. The party that wants to impose subrogation has the burden of proving it. Illinois Farmers and Anderson have not done so in this case. Rather, American Family explicitly waived its rights to subrogation and thus never possessed the right to recover the UIM benefits; the claim to recover such damages remained at all times with Voge.
>
> In light of this, we hold the collateral source rule applicable. The collateral source rule does not allow a tortfeasor to reduce his or her liability . . . by benefits that the injured person receives . . . . Rather, the collateral source rule requires that the tortfeasor be held responsible for his conduct by requiring the tortfeasor to compensate the injured party the full amount of damages.
>
> *We recognize that the results in this case allow the injured party a double recovery. However, a contrary conclusion would result in giving the tortfeasor a windfall:* the tortfeasor would not have to pay the full amount of damages he would owe . . . . Since Voge's recovery from American Family stemmed from his own actions of obtaining underinsurance and paying the premium for it, the better result is to allow Voge to recover that windfall, not Illinois Farmers and Anderson. *Any windfall in benefits should inure to the injured party, not to the tortfeasor.*

*Id.* at 732–33 (emphasis added) (citations omitted).

¶ 112. How does *Voge* compare to the present case? In *Voge,* the injured party brought suit against the other driver and the driver's insurer. *Id.* at 728. After achieving a successful verdict, the injured party's insurer paid UIM benefits and explicitly waived its subrogation rights related to those benefits. *Id.* at 729–30. In this case, the injured party brought suit against the other driver and the driver's insurer. The injured party's insurer initially asserted subrogation rights but this subrogation claim was dismissed by the court *on the insurer's stipulation* because the insurer had voluntarily gone to arbitration and lost. In my view, the voluntary waiver in *Voge* and the stipulation here are functionally the same.

¶ 113. The majority tries to dodge this result by pointing to the fact that the tortfeasor in *Voge* was relieved of paying medical expenses to the injured party after the injured party received medical expenses from his insurer. But the *Voge* facts were critically different: Voge's insurer went to arbitration with the tortfeasor's insurer and received a 70 percent reimbursement of the $5,895.75 that Voge's insurer had paid to Voge. *Id.* at 730. The 70 percent figure reflected, in part, Voge's contributory negligence. *Id.* at 729. Requiring the tortfeasor to pay all of Voge's medical expenses would have meant a double payment by the tortfeasor as well as double recovery by Voge. *Id.* at 733. Here, Steffen's insurer (Wilson Mutual) did not pay $10,000 in medical expenses to either American Family or the Fischers. Thus, there is no double payment, and the collateral source rule allows double recovery on these facts to avoid giving the tortfeasor and her insurer a windfall.

¶ 114. For the same reasons articulated so clearly in *Voge,* the collateral source rule should preclude any

reduction in the jury award here. American Family may not have "waived" its right to subrogation by signing it away, but it "waived" its right when it voluntarily agreed to enter binding arbitration with Wilson Mutual and lost. By submitting the question of its subrogation claim to arbitration, American Family surrendered the right to recover medical expenses from the Fischers and lost its right to collect from the tortfeasor. If the plaintiff in *Voge,* who was contributorily negligent for the accident, could not be deprived of his jury verdict, the Fischers have an even clearer entitlement to recovery of the jury verdict against Steffen.

## B. Subrogation Rule

¶ 115. The majority correctly characterizes the rules of subrogation as "ensur[ing] that the loss is ultimately placed upon the tortfeasor and prevent[ing] the subrogor . . . from being *unjustly* enriched through double recovery." Majority op., ¶ 31 (emphasis added). Conspicuously absent from the majority's description, however, is an acknowledgment that subrogation in the insurance context is a derivative right arising from the insurer's *contractual* obligation to satisfy a loss caused by a third party to its insured. *Muller v. Soc'y Ins.,* 2008 WI 50, ¶ 22, 309 Wis. 2d 410, 750 N.W.2d 1.

¶ 116. As the court of appeals noted, "[O]nce an insurer pays, it has a right to stand in the place of its insured, pursuant to the contract for insurance, and may seek to recoup its outlay from the tortfeasor." *Fischer v. Steffen,* 2010 WI 68, ¶ 7, 325 Wis. 2d 382, 783 N.W.2d 889. Accordingly, the rules of subrogation allow an insurer to take over ownership of the insured's right to seek recovery from the tortfeasor. *See Paulson,* 263 Wis. 2d 520, ¶¶ 27, 29. Normally, this right "does not

arise until the debt has been fully paid." *Drinkwater v. Am. Fam. Mut. Ins. Co.,* 2006 WI 56, ¶ 16, 290 Wis. 2d 642, 714 N.W.2d 568.

¶ 117. This principle is referred to as the "recovery priority rule" or the "subrogation rule of priority." *Muller,* 309 Wis. 2d 410, ¶¶ 31–32. This court has explained that "[s]ubrogation is to be allowed only when the insured is compensated in full by recovery from the. tortfeasor." *Rimes v. State Farm Mut. Auto. Ins. Co.,* 106 Wis. 2d 263, 272, 316 N.W.2d 348 (1982); *see also Garrity v. Rural Mut. Ins. Co.,* 77 Wis. 2d 537, 542, 253 N.W.2d 512 (1977).

¶ 118. Under this principle, the Fischers would be entitled to recover in full from the tortfeasor before American Family could exercise any right of subrogation.

¶ 119. In this case, there is no right of subrogation because American Family never exercised its right to stand in the place of the Fischers. Instead, it staked its rights to subrogation on binding arbitration with Wilson Mutual. When the arbitration panel concluded that American Family had no subrogation claim against Wilson Mutual, American Family filed a stipulation and order for dismissal of its subrogation claim with prejudice. At that point, the rules of subrogation ceased to apply to the Fischers' claims, because, as a matter of law and contract, no party was entitled to subrogation. It was therefore inappropriate to reduce the jury award on the basis of a right that no longer existed.

### C. Made Whole Doctrine

¶ 120. Like the subrogation "rule of priority" discussed above, the essence of the made whole doctrine is that an insured is entitled to have priority over an

insurer where funds are limited. *Vogt v. Schroeder,* 129 Wis. 2d 3, 13, 383 N.W.2d 876 (1986). The doctrine rests ultimately on equitable principles that depend on the facts; it is not an inflexible rule. *Id.*

¶ 121. One of the critical equitable principles underlying the doctrine is "that the wrongdoer should be responsible for his conduct and not be allowed to go scot-free by failing to respond in damages" while the insurer is required to pay under the insurance policy. *Id.* Where the right of subrogation would operate to deprive the insured of his compensation for the injury suffered, the equities demand that the insured take priority over the insurer's claim for subrogation. *Id.* at 15.

¶ 122. Stated differently, it is at least potentially inequitable for an insurer to protect its own interests before the insured is made whole. The majority concludes, as did the court of appeals, that the made whole doctrine is inapplicable because the Fischers have not shown that they have not been made whole or that there is a limited pool of resources from which recovery can be obtained. Majority op., ¶ 51; *Fischer,* 325 Wis. 2d 382, ¶ 8. This conclusion ignores the equitable principles underlying all three rules implicated in this case.[2]

---

[2] *See Muller v. Soc'y Ins.,* 2008 WI 50, ¶ 22, 309 Wis. 2d 410, 750 N.W.2d 1 ("Subrogation rests upon equitable principles."); *Shulte v. Frazin,* 176 Wis. 2d 622, 628, 500 N.W.2d 305 (1993) ("[S]ubrogation is based upon equitable principles. . . . To resolve the issue in [a] case, [the court] must apply equitable principles to the facts."); *Petta v. ABC Ins. Co.,* 2005 WI 18, ¶ 27, 278 Wis. 2d 251, 692 N.W.2d 639 ("It has long been recognized that subrogation rests upon principles of equity."); *Salveson v. Douglas County,* 2001 WI 100, ¶ 56, 245 Wis. 2d 497, 630 N.W.2d 182 ("[C]ourts are guided by certain equitable principles. The collateral source rule operates 'not to prevent the plaintiff from being overcompensated but rather to prevent

¶ 123. This conclusion also ignores the reality that the Fischers' insurer forced the Fischers to seek redress on their own and made their task more economically challenging and difficult by rushing to arbitration and dropping the ball. Failure to take into account the equities derived from these facts will encourage insurers to cut their insureds adrift regardless of the consequences.

¶ 124. In finding the made whole rule inapplicable, the majority relies heavily on *Paulson. See* majority op., ¶¶ 35–43. In *Paulson,* the plaintiff insured was injured and her car damaged in a car accident with another driver, Cheryl Schacht. *Paulson,* 263 Wis. 2d 520, ¶ 4. Before the Paulsons filed suit, their insurer, Midwest Security Insurance Company, negotiated a settlement agreement with Schacht's insurer, Allstate Insurance Company. *Id.,* ¶ 2. The agreement took into consideration Paulson's comparative negligence in the accident, and accordingly reduced Allstate's payment to Midwest by 30 percent. *Id.,* ¶ 6. In the circuit court, Allstate argued that the Paulsons should not be able to present evidence on property damage aside from their $500 deductible, because Midwest had already settled any claims for property damage with Allstate. *Id.,* ¶ 9–10.

¶ 125. The question presented to this court in *Paulson* was whether Paulson could recover the difference between what her insurer paid and what it settled

---

the tortfeasor from paying twice.' ") (citing *Flowers v. Komatsu Mining Sys., Inc.,* 165 F.3d 554, 558 (7th Cir. 1999)); *Garrity v. Rural Mut. Ins. Co.,* 77 Wis. 2d 537, 542, 253 N.W.2d 512 (1977) ("[W]here either the insurer or the insured must to some extent go unpaid, the loss should be borne by the insurer for that is a risk the insured has paid it to assume.") (citing *St. Paul Fire & Marine Ins. Co. v. W.P. Rose Supply Co.,* 198 S.E.2d 482, 484 (N.C. Ct. App. 1973).

for in negotiations with the tortfeasor's insurer. *Id.,* ¶ 18. We concluded that Paulson was not entitled to the difference, because she had already received the amount of damages to which she was entitled, and the made whole doctrine did not apply. *Id.,* ¶¶ 18, 20.

¶ 126.   In denying the Paulsons' claim, we acknowledged that *Garrity, Rimes,* and *Vogt,* as well as several cases in the court of appeals, found that the insured was to have priority over the insurer when they were competing for limited funds. *Id.,* ¶ 24. These cases, we emphasized, considered the priority rule where insurers were "attempting to take the funds that should have gone to the insured." *Id.,* ¶¶ 21–24. They were distinguishable from the Paulsons' claim because Midwest had paid for the car repairs and settled with Allstate regarding that bill. *Id.,* ¶ 27. The reduction in the Paulsons' recovery was because Midwest had agreed to recovery of only 70 percent against Allstate. *Id.*

¶ 127.   We concluded that Midwest had divested itself of its subrogation interest by choosing to settle with Allstate, and stated, "We find that the subrogation trumps the collateral source rule *under the facts of this case.*" *Id.,* ¶ 32 (emphasis added). In doing so, we did not overrule or depart from our holdings in *Garrity* and *Rimes,* but found that the "balance of equities" required a different result. *Id.,* ¶ 41.

¶ 128.   The *Paulson* decision makes clear that the priority rule is not ironclad; if it were applied inflexibly, it might discourage arbitration proceedings and impede normal settlement agreements between insurers. *See id.,* ¶ 43. These are laudable goals and valid considerations. On the other hand, the majority's departure from the priority rule in this case seriously dilutes the rule and impedes the injured insured—here, the Fischers—from receiving full recovery. In effect, the

majority's decision allows a wedge to be driven between the insurer and insured who should be allied in seeking recovery from the tortfeasor.

¶ 129. The holding in *Paulson* was not a radical departure from our precedent, but was specifically limited to its facts.[3] *See* majority op., ¶ 17. It does not apply in all situations, and certainly cannot cover the facts presented in the Fischers' case, as the majority concludes. *See* majority op., ¶ 18. The instant case does not involve any allegation of contributory negligence. It does not involve a settlement agreement between insurers, which this court encourages and favors. The Fischers, unlike the Paulsons, were forced to go to trial to recover the full amount of their medical expenses. Under these disparate facts, applying the holding of *Paulson* works an inequitable result.

IV

¶ 130. In the cases considering the intersection of these rules, we have repeatedly stated that the tortfeasor should be held fully responsible. *See Ellsworth,* 235 Wis. 2d 678, ¶ 17; *Paulson,* 253 Wis. 2d 520, ¶ 34. We have also held that when the intersection of these competing principles and policies result in a windfall, the benefit should always go to the injured party rather than the tortfeasor. *See Paulson,* 263 Wis. 2d 520, ¶ 30; *Koffman v. Leichtfuss,* 2001 WI 111, ¶¶ 29–30, 246 Wis. 2d 31, 630 N.W.2d 201.

¶ 131. We have explained that subrogation "depends upon a just resolution of a dispute under a particular set of facts," because "[e]quity does not lend

---

[3] *Paulson v. Allstate Ins. Co.,* 2003 WI 99, 263 Wis. 2d 520, 665 N.W.2d 744, is actually consistent with the decision on medical expenses in *Voge v. Anderson,* 181 Wis. 2d 726, 512 N.W.2d 749 (1994).

itself to the application of black letter rules." *Vogt,* 129 Wis. 2d at 12. The complex rules brought to bear in this case should be applied to achieve an equitable result, under all the facts, and the Fischers should be entitled to recovery of their damages before any benefit inures to the tortfeasor.

¶ 132.   For the foregoing reasons, I respectfully dissent.